CADES SCHUTTE
A Limited Liability Law Partnership

C. MICHAEL HEIHRE          1307
MICHI MOMOSE               9777
Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4212
Telephone:  (808) 521-9200
Fax:  (808) 521-9210
Email:  mheihre@cades.com
        mmomose@cades.com

Attorneys for Plaintiff
ALOHA PETROLEUM, LTD.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALOHA PETROLEUM, LTD.,<br><br>          Plaintiff,<br><br>     v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>          Defendant. | CIVIL NO. _____<br>(Contract)<br><br>**COMPLAINT; EXHIBIT A; DEMAND FOR JURY TRIAL** |

## COMPLAINT

1. Plaintiff Aloha Petroleum, Ltd. ("**Aloha**"), by its undersigned counsel, brings this action against Defendant National Union Fire Insurance Company of Pittsburgh, PA ("**National Union**"), and alleges as follows:

## INTRODUCTION

2. Aloha brings this action for breach of contract and declaratory relief arising out of National Union's failure to honor its contractual obligations to provide coverage to Aloha in connection with underlying climate-change-related lawsuits brought against Aloha by the City and County of Honolulu and Honolulu Board of Water Supply ("**Honolulu Action**"), and by the County of Maui ("**Maui Action**").

3. Defendant National Union issued to Aloha's then-parent E-Z Serve, Inc., a liability insurance policy no. GLA 1169253, with a policy period of February 1, 1985 to February 1, 1986 ("**1985 National Union Policy**"). A partially redacted copy of that policy is attached and incorporated as Exhibit "A."

4. Upon information and belief, Defendant National Union issued to Aloha's then-parent E-Z Serve, Inc., a liability insurance policy no. GLA 1169215, with a policy period of February 1, 1984 to February 1, 1985 (the "**1984 National Union Policy**").

5. Upon information and belief, Defendant National Union has assumed by merger the obligations of Landmark Insurance Company, which issued to Aloha's

then-parent E-Z Serve, Inc., a liability insurance policy no. SMP 8000367, with a policy period of October 1, 1980 to October 1, 1981 (the "**1980 Landmark Policy**").

6.  Upon information and belief, Defendant National Union has assumed by merger the obligations of Landmark Insurance Company, which issued to Aloha's then-parent E-Z Serve, Inc., a liability policy no. SMP 8000067, with a policy period of October 1, 1978 to October 1, 1980 (the "**1978 Landmark Policy**").

7.  Upon information and belief, the four above-referenced policies (the "**AIG Policies**") include within their coverage Aloha as an additional Named Insured.

8.  Upon information and belief, the above-referenced policies obligate National Union to defend and indemnify Aloha in connection with the Honolulu Action and Maui Action referenced above.

9.  Aloha brings this action because National Union has failed and/or refused to defend and indemnify Aloha under any of the AIG Policies.

## PARTIES

10. Aloha, currently a subsidiary of Sunoco, LP, is incorporated in the State of Hawaiʻi, with its principal place of business in Honolulu, Hawaiʻi.

11. Upon information and belief, National Union is an insurance company incorporated under the laws of Pennsylvania, with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between plaintiff and defendant, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district as the claims in this action arise in Hawai'i.

## BACKGROUND

### The Underlying Climate Change Lawsuits

14. This action concerns insurance coverage for two separate but related lawsuits filed against Aloha (and other defendants) by the City and County of Honolulu and Honolulu Board of Water Supply (filed March 9, 2020 in the First Circuit Court, State of Hawai'i, Civil No. 1CCV-20-0000380 (LWC), amended March 22, 2021), and the County of Maui (filed October 12, 2020 in the Second Circuit Court, State of Hawai'i, Civil No. 2CCV-20-0000283) (collectively, the "**Climate Change Lawsuits**").

15. In their respective complaints in the Climate Change Lawsuits, the plaintiffs allege, *inter alia*, that fossil fuel products, when used in the ordinary course, have contributed to emissions of carbon dioxide, and other greenhouse gases – and that the use of those products by the public have contributed to global

warming. Specifically, the plaintiffs assert various tort claims contending that the defendants are directly responsible for the damaging effects of global warming because of defendants' alleged failure to disclose or warn of the hazards of using the fossil fuel products that the defendants sold into the stream of commerce. Plaintiffs assert that these alleged failures to disclose or warn resulted in increased carbon dioxide emissions – and an increase in resulting injuries and damage from the use of fossil fuel products – during the period between 1965 and the present.

16.   The plaintiffs further allege that, as a result of global warming and its attendant environmental impacts, they have suffered and will continue to suffer severe damage and injury, including but not limited to: the injury to or destruction of publicly-owned-or-operated facilities and assets, increased costs concerning planning and preparation, and injuries to public resources.

17.   The plaintiffs assert various claims against Aloha (and other defendants), such as strict liability for failure to warn, negligent failure to warn, as well as claims of nuisance and trespass.

18.   The plaintiffs seek an unspecified amount of compensatory damages, as well as equitable relief and attorneys' fees and costs of litigation, among other damages.

19.   Aloha disputes the plaintiffs' claims and has retained counsel to provide a defense with respect to the Climate Change Lawsuits.

20. To date, Aloha has incurred more than $880,000 in defense costs in connection with the Climate Change lawsuits, and Aloha expects that it will continue to incur significant additional defense costs, as the litigation progresses.

**Notice and Denial of Coverage**

21. On or about February 2, 2021, Aloha provided National Union with notice of the Climate Change Lawsuits under the four AIG Policies, along with a request for defense and indemnity coverage under the AIG Policies.

22. By letter dated April 19, 2021, National Union expressed its inability to locate copies of three of the four policies (the 1978 Landmark Policy, the 1980 Landmark Policy and the 1984 National Union Policy). National Union did, however, acknowledge the issuance of the 1985 National Union Policy.

23. In its April 19, 2021 letter, National Union denied coverage for the Climate Change Lawsuits under the 1985 National Union Policy.

24. In its April 19, 2021 letter, National Union asserted the position that exclusion (f), the so-called "qualified pollution exclusion," in the 1985 National Union Policy precludes all coverage – both defense and indemnity – for the Climate Change Lawsuits.

25. Despite subsequent correspondence sent by Aloha explaining why National Union's denial of coverage is incorrect, National Union continues to deny its contractual obligation to provide coverage for the Climate Change Lawsuits.

**1985 National Union Policy**

26.     In exchange for the payment of certain premiums, National Union issued a Comprehensive General Liability insurance policy bearing policy number GLA 1169253 to E-Z Serve, Inc., which by endorsement names Aloha as a Named Insured.  *See* 1985 National Union Policy, Ex. A, at p. EZSERVE000024.

27.     The 1985 National Union Policy provides coverage for "all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence . . ." *Id.* at § I, at p. EZSERVE000003.

28.     The 1985 National Union Policy also provides that ". . . ***the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent* . . . .**" *Id.* at § I (emphasis added).

29.     "Bodily injury" is defined as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* at "Definitions", at p. EZSERVE000004.

30.     The 1985 National Union Policy defines "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss

of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." *Id.*

31. "Occurrence," in turn, is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.*

32. The 1985 National Union Policy further provides for $1 million in per occurrence and aggregate (where applicable) coverage for bodily injury liability and property damage liability for the February 1, 1985 to February 1, 1986 policy period. *See id.* at p. EZSERVE000014.

33. The 1985 National Union Policy obligates National Union to pay any covered claim or judgment or defend any covered suit until "the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." *Id.* at EZSERVE00003, § I.

34. The 1985 National Union Policy specifically provides coverage for "products hazard" which includes bodily injury or property damage arising out of the named insured's products. *Id.* at EZSERVE00004.

35. Notwithstanding these express contractual obligations, National Union refuses to provide defense or indemnity coverage to Aloha under the 1985 National Union Policy with respect to the Climate Change Lawsuits.

36. On information and belief, National Union would assert the same denial-of-coverage position with respect to the 1984 National Union Policy, the 1978 Landmark Policy and the 1980 Landmark Policy.

## COUNT I
(Breach of Contract – Duty to Defend)

37. Aloha re-alleges paragraphs 1 through 36.

38. Aloha has incurred and continues to incur substantial defense costs in connection with the Climate Change Lawsuits.

39. Aloha is entitled to a defense under one or more of the AIG Policies with respect to the Climate Change Lawsuits.

40. All conditions precedent to recovery under the AIG Policies have been satisfied, waived, or are otherwise inapplicable.

41. National Union refuses and/or has failed to defend Aloha with respect to the Climate Change Lawsuits.

42. National Union has acted in a manner inconsistent with the terms and conditions of the AIG Policies, and its actions constitute a breach of the AIG Policies.

43. As a direct and proximate result of National Union's breach of the AIG Policies, Aloha has sustained, and National Union is liable for, damages in an amount to be determined at trial.

## COUNT II
(Breach of Contract – Duty to Indemnify)

44. Aloha re-alleges paragraphs 1 through 43.

45. Aloha is entitled to indemnity coverage under one or more of the AIG Policies with respect to the Climate Change Lawsuits.

46. All conditions precedent to recovery under the AIG Policies have been satisfied, waived, or are otherwise inapplicable.

47. National Union has denied indemnity coverage under the 1985 National Union Policy and, upon information and belief, would deny indemnity coverage under the other three AIG Policies once they are located.

48. National Union has acted in a manner inconsistent with the terms and conditions of the AIG Policies, and its actions constitute a breach of the AIG Policies.

49. As a direct and proximate result of National Union's breach of the AIG Policies, Aloha has sustained, and National Union is liable for, damages in an amount to be determined at trial.

## COUNT III
(Declaratory Judgment)

50. Aloha re-alleges paragraphs 1 through 49.

51. Aloha's alleged liability arising out of the Climate Change Lawsuits, as well as Aloha's costs of defending against those lawsuits, are within the coverage provided by the AIG Policies.

52. With respect to Aloha's alleged liability arising out of the Climate Change Lawsuits, an alleged occurrence and/or bodily injury, property damage, or other triggering event within the meaning of the AIG Policies has taken place during the periods of these policies.

53. All conditions precedent to recovery under the AIG Policies have been satisfied, waived, or are otherwise inapplicable.

54. An actual controversy exists between Aloha and National Union regarding National Union's duties and obligations under the AIG Policies, because Aloha contends that:

    (a) To date, National Union has repudiated its duty to defend Aloha against the claims brought in the Climate Change lawsuits, and National Union's duty to defend does not terminate until the AIG Policies' applicable limits of liability have been exhausted;

    (b) National Union has a duty to pay all sums with respect to any indemnity costs that Aloha may incur with respect to the Climate Change Lawsuits, subject to the applicable limits of the AIG Policies;

55. A judicial declaration is necessary to resolve the controversy between the parties.

56. Under 28 U.S.C. § 2201 et seq., Aloha is entitled to a declaration by this Court of its rights and National Union's duties with respect to the insurance claims discussed in this complaint.

WHEREFORE, Aloha requests a judgment in its favor and against National Union as follows:

    (a) Declaring that National Union has a duty to defend Aloha for the Climate Change Lawsuits;

    (b) Declaring that National Union has a duty to indemnify Aloha for the Climate Change Lawsuits;

    (c) Entering a judgment enjoining National Union from failing to defend and indemnify Aloha for the Climate Change Lawsuits;

    (d) For money damages in an amount yet to be ascertained;

    (e) For reasonable and necessary attorneys' fees and costs; and

    (f) For other such relief as is just and proper, including interest.

DATED: Honolulu, Hawaiʻi, August 10, 2022.

        CADES SCHUTTE
        A Limited Liability Law Partnership


        */s/ C. Michael Heihre*
        C. MICHAEL HEIHRE
        MICHI MOMOSE

        Attorneys for Plaintiff
        ALOHA PETROLEUM, LTD.