**Date:** 04/29/2005

**Policy Number:** 071-41-27

| | |
|---|---|
| **Underwriter Name:** | CYNTHIA E. CORNING |
| **Underwriter Region:** | 0005 |
| **Underwriter Branch:** | 0005 |
| **Underwriter Telephone:** | 213-689-3500 |
| | |
| **Operator Name:** | MARGARET URIBE |
| **Operator Telephone:** | 213-689-3500 |
| | |
| **Issuing Division:** | 0054 |
| **Policy Effective Date:** | 04/01/2005 |
| **Transaction Type:** | REN |
| | |
| **Set Copy Name:** | INSURED COPY |

EPS TRACKING-ID: UUF93312200504292005
POLICY NUMBER:   000714127

DocuCorp International    *Archive Copy*                                      **eUPS**

# EXHIBIT 10

EZSERVE000494

CYNTHIA E. CORNING
LOS ANGELES
777 S FIGUEROA STREET
LOS ANGELES, CA 90017

Re: ALOHA PETROLEUM,  LTD.

PRODUCER IS:

MONARCH INSURANCE SERVICES
800 S KING ST
STE 300
HONOLULU, HI 96813-2733

PRODUCER COV LTR*Archive Copy*

EZSERVE000495

# COMMON POLICY DECLARATIONS

**POLICY NO.**   GL   071-41-27

**RENEWAL OF:**   3602234

1. NATIONAL UNION FIRE INSURANCE
   COMPANY OF PITTSBURGH, PA.

2. AMERICAN HOME ASSURANCE COMPANY

3. THE INSURANCE COMPANY OF THE
   STATE OF PENNSYLVANIA

MEMBERS OF THE
AMERICAN INTERNATIONAL GROUP, INC
EXECUTIVE OFFICES
70 PINE STREET
NEW YORK, N.Y.

PRODUCER NO: 36247
MONARCH INSURANCE SERVICES
800 S KING ST
STE 300
HONOLULU, HI 96813-2733

COVERAGE IS PROVIDED IN THE
COMPANY DESIGNATED BY NUMBER
**2**
A STOCK INSURANCE COMPANY
(HEREIN CALLED THE COMPANY)

**NAMED INSURED**   ALOHA PETROLEUM, LTD.

**MAILING ADDRESS**   1132 BISHOP ST FL 17
HONOLULU, HI 96813-2807

**POLICY PERIOD: From**   04/01/2005   **To**   04/01/2006   **At**
12:01 A.M. Standard Time at your mailing address shown above

**BUSINESS DESCRIPTION**   PETROLEUM PRODUCTS

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT

| | PREMIUM |
|---|---|
| Boiler and Machinery Coverage Part | $ |
| Commercial Auto Coverage Part | $ |
| Commercial Crime Coverage Part | $ |
| Commercial General Liability Coverage Part | $ |
| Commercial Inland Marine Coverage Part | $ |
| Commercial Property Coverage Part | $ |
| Farm Coverage Part | $ |
| | $ |
| | $ |
| | $ |
| **TOTAL** | $ |

Premium shown is payable: ███   at inception.

Forms applicable to all Coverage Parts:   _____ SEE ATTACHED SCHEDULE.
(Show numbers)

**COUNTERSIGNED** _____ **BY** _____
(Date)                          (Authorized Signature)

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by
state law, this policy shall not be valid unless countersigned by our authorized representative.

*Elizabeth M. Tuck*

Secretary
National Union Fire Insurance Company of Pittsburgh PA.
American Home Assurance Company
The Insurance Company Of The
State Of Pennsylvania   *Archive Copy*

President
American Home
Assurance Company

Copyright. Insurance Services Office, Inc., 1983, 1984

Date Issued:   04/29/2005

EZSERVE000496

1. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH A STOCK COMPANY

2. AMERICAN HOME ASSURANCE COMPANY A STOCK COMPANY



Member Companies of American International Group
EXECUTIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270

3. THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA A STOCK COMPANY

| 2 |

COVERAGE IS PROVIDED IN THE COMPANY DESIGNATED BY NUMBER (HEREIN CALLED THE COMPANY).

## COMMERCIAL GENERAL LIABILITY DECLARATIONS

**POLICY NO.**     GL  071-41-27

**NAMED INSURED**     ALOHA PETROLEUM, LTD.

**MAILING ADDRESS**     1132 BISHOP ST FL 17

HONOLULU               HI 96813-2807

**POLICY PERIOD: From**     04/01/2005     **to**     04/01/2006     **at**

**12:01 A.M. Standard Time at your mailing address shown above**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Prod-Comp Operations) | $ | 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | 2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $ | 1,000,000 |
| EACH OCCURRENCE LIMIT | $ | 1,000,000 |
| FIRE DAMAGE LIMIT | $ | 50,000 Any One Fire |
| MEDICAL EXPENSE LIMIT | $ | 5,000 Any One Person |

**Forms Of Business:**   ☐ Individual   ☐ Partnership   ☐ Joint Venture   ☒ Organization

(Other than Partnership or Joint Venture)

**Business Description:**     PETROLEUM PRODUCTS

**Location Of All Premises You Own, Rent or Occupy:**     SEE ATTACHED SCHEDULE

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATE. | ADVANCE PREMIUM | |
|---|---|---|---|---|---|
| | | | | PR/CO | ALL OTHER |
| SEE ATTACHED SCHEDULE | | | | | |

Premium shown is payable:  ▮▮▮▮  at inception.          **TOTAL: $**   ▮▮▮▮

Premium for Certified Acts of Terrorism Coverage Under Terrorism Risk Insurance Act 2002:
▮▮▮▮   Included In Policy Premium

**ENDORSEMENTS ATTACHED TO THIS POLICY:**     **SEE ATTACHED SCHEDULE.**

**COUNTERSIGNED**  _____  **BY**  _____
(Date)                          (Authorized Representative)

*Archive Copy*
Copyright. Insurance Services Office, Inc., 1983, 1984

Date Issued:  04/29/2005

1. National Union Fire Insurance
   Company of Pittsburgh, Pa.
2. American Home Assurance Company
3. The Insurance Company of The
   State of Pennsylvania
4. The Birmingham Fire Insruance
   Company of Pennsylvania
5. Commerce and Industry
   Insurance Company



2

Coverage is provided in the
Company Designated by number

A Stock Insurance Company
(herein called the Company)



MEMBERS OF THE
AMERICAN INTERNATIONAL GROUP, INC

EXECUTIVE OFFICES
70 PINE STREET
NEW YORK. N.Y.

# LIQUOR LIABILITY DECLARATIONS

Policy No. GL   071-41-27

Named Insured:  ALOHA PETROLEUM, LTD.

Mailing Address: 1132 BISHOP ST FL 17

HONOLULU                    HI 96813-2807
Policy Period:  From 04/01/2005 to 04/01/2006
               at 12:01 AM Standard Time at your mailing address shown above.

Form of Business:   ☐ Individual   ☐ Partnership   ☐ Joint Venture   ☐ Limited Liability Company
                    ☒ Organization, including a corporation (but not including a Partnership, Joint Venture or
                    Limited Liability Company)

In return for the payment of the premium and subject to all the terms of this policy, we agree to provide the insurance as stated in the policy.

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Aggregate Limit | $ | 1,000,000 |
| Each Common Cause Limit | $ | 1,000,000 |

All Premises you own, rent or occupy.

Location Number:
Address of all Premises you own, rent or occupy:        SEE ATTACHED SCHEDULE

Business Description: PETROLEUM PRODUCTS

| Classification | Code NO. | Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| | | SEE ATTACHED SCHEDULE | | |

Premium Shown is payable:                           at inception; Total: $

Premium for Certified Acts of Terrorism Coverage Under Terrorism Risk Insurance Act 2002:
                    Included In Policy Premium

Endorsement attached to this policy: SEE ATTACHED SCHEDULE

MONARCH INSURANCE SERVICES
800 S KING ST
STE 300

Countersigned _____        By _____

65273 (05/96)      *Archive Copy*                    Date Issued: 04/29/2005

EZSERVE000498

**FORMS SCHEDULE**

EFFECTIVE DATE:  04/01/2005

NAMED INSURED:  ALOHA PETROLEUM,  LTD.

POLICY NO: GL    071-41-27

```
IL0017 (1198) COMMON POLICY CONDITIONS
IL0003 (0702) CALCULATION OF PREMIUM
CG0001 (1001) COMM GENERAL LIAB COV
CG0033 (1001) LIQUOR LIABILITY
CG0062 (1202) WAR LIABILITY EXCLUSION
CG0064 (1202) WAR LIABILITY EXCLUSION
CG0224 (1093) CANCELLATION BY US
CG2149 (0999) TOTAL POLLUTION EXCLUSION
CG2250 (1188) EXCL-PUBLIC UTILL-FAIL TO SUPPLY
IL0021 (0702) NUCLEAR ENERGY LIAB EXCL (BROAD FORM)
IL0285 (0702) HI CHANGES-CANCEL & NONRENEWAL
IL0285 (0702) HI CHANGES-CANCEL & NONRENEWAL
58332  (0793) TOTAL LEAD EXCLUSION
81944  (0295) BROAD FORM NAMED INSURED
78689  (0801) FUNGUS EXCLUSION
82540  (0803) ASBESTOS AND SILICA EXCL ENDT
51767  (0402) EMPLOYEE BENEFITS LIABILITY INS
81712  (0901) ADD'L INSRD-WHERE REQ'D UNDER CONTRACT
82898  (0901) RADIOACTIVE MATTER EXCLUSION
80521  (0702) MTBE & OTHER FUEL OXYGENATES EXCL
```

***Archive Copy***

EZSERVE000499

# Important Notice To Our Customers

**The COMMERCIAL GENERAL LIABILITY COVERAGE FORM, CG 00 01 10 01, issued to you may have contained a formatting error that has been corrected with issuance of your renewal policy.**

SECTION V - DEFINITIONS, 4. "Coverage territory" (page 13 of your COMMERCIAL GENERAL LIABILITY COVERAGE FORM - CG 00 01 10 01), may have contained a formatting error as follows (error is underlined for clarity):

**4.** "Coverage territory" means:

    **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

    **c.** All other parts of the world if the injury or damage arises out of:

        **(1)** Goods or products made or sold by you in the territory described in **a.** above;

        **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

        **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication <u>provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.</u>

This formatting error erroneously implies that <u>only</u> (3) "personal and advertising injury" offenses must be determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to. This is incorrect. The underlined wording applies to (1), (2) and (3) as indicated below. The correct formatting reads as follows:

**4.** "Coverage territory" means:

    **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

    **c.** All other parts of the world if the injury or damage arises out of:

        **(1)** Goods or products made or sold by you in the territory described in **a.** above;

        **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

        **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

        provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

**Please contact your Agent or Broker for additional information or clarification of coverage and how the correction of this formatting error affects your insurance program.**

# LIQUOR PREMISES SCHEDULE

Policy No.: **GL    071-41-27**                          Issue Date: **April 20, 2005**

Effective Date: **04/01/2005**

Issue To: **ALOHA PETROLEUM,    LTD.**

---

**0001  001   1132 BISHOP ST FL 17**

**HONOLULU              HI 968132807**

*Archive Copy*

EZSERVE000501

POLICY NUMBER: GL    071-41-27

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**Archive Copy** ght, Insurance Services Office, Inc., 1998

EZSERVE000502

POLICY NUMBER: GL    071-41-27                                    IL 00 03 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**IL 00 03 07 02**    *Archive Copy* © ISO Properties, Inc., 2001                **Page 1 of 1**    □

POLICY NUMBER: GL   071-41-27

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

EZSERVE000504

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

EZSERVE000505

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or hreatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned o, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

EZSERVE000506

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading". This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

EZSERVE000507

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

EZSERVE000508

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

EZSERVE000509

**l.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1.  Insuring Agreement**

a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2.  Exclusions**

We will not pay expenses for "bodily injury":

**a.  Any Insured**

To any insured, except "volunteer workers".

**b.  Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.  Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.  Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.  Athletics Activities**

To a person injured while taking part in athletics.

**f.  Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.  Coverage A Exclusions**

Excluded under Coverage **A**.

**h.  War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

**1.**  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a.  All expenses we incur.

EZSERVE000510

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

*Archive Copy*   © ISO Properties, Inc., 2000                    CG 00 01 10 01   □

EZSERVE000511

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

EZSERVE000512

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property-damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

EZSERVE000513

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

EZSERVE000514

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

EZSERVE000515

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

EZSERVE000516

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*Archive Copy*   © ISO Properties, Inc., 2000   CG 00 01 10 01   □

EZSERVE000517

**15."Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16."Products-completed operations hazard":**

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17."Property damage" means:**

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18."Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20."Volunteer worker"** means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

EZSERVE000518

**b** Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

**a.** Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

*Archive Copy* © ISO Properties, Inc., 2000                **CG 00 01 10 01**   □

EZSERVE000519

POLICY NUMBER: GL   071-41-27

COMMERCIAL GENERAL LIABILITY
CG 00 33 10 01

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - LIQUOR LIABILITY COVERAGE

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking such damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "injury" only if:

(1) The "injury" occurs during the policy period in the "coverage territory"; and

(2) Prior to the policy period no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

**d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

(1) Reports all, or any part, of the "injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "injury"; or

(3) Becomes aware by any other means that "injury" has occurred or has begun to occur.

### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

EZSERVE000520

**c. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d. Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is suspended or after such license expires, is cancelled or revoked.

**e. Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

4. All costs taxed against the insured in the "suit".

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

7. Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds.

b. A partnership or joint venture, you are insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

EZSERVE000521

**(1)** "Injury":

   **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

   **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence Paragraph **(1)(a)** above; or

   **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above.

**(2)** "Property damage" to property:

   **(a)** Owned or occupied by, or

   **(b)** Rented or loaned

   to that "employee", any of your other "employee", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company

that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - LIQUOR LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Injury, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "injury" took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any "injury".

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

EZSERVE000522

c. You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other for than first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with that all other insurance by the method described in **b.** below.

b. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representation you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

EZSERVE000523

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

**1.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**2.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the "injury" occurs in the course of travel or transportation  between any places included in **a.** above; or

**c.** All other parts of the world if the "injury" arises out of:

(1) Goods or products made or sold by you in the territory described in **a.** above; or

(2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**3.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**4.** "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**5.** "Injury" means all damages, including damages because of "bodily injury" and "property damage", and including damages for care, loss of services or loss of support.

**6.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary" worker".

**7.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**8.** "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding  in which such damages are claimed and to which the insured submits with our consent.

**9.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**10.** "Your product":

**a.** Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

(2) The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

EZSERVE000524

POLICY NUMBER: GL   071-41-27                    COMMERCIAL GENERAL LIABILITY
                                                                      CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **i.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

B. The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

C. Exclusion **h.** under Paragraph **2., Exclusions** of **Section I - Coverage C - Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I - Coverage C - Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

CG 00 62 12 02   *Archive Copy* © ISO Properties, Inc., 2002                    Page 1 of 1      □

POLICY NUMBER: GL    071-41-27

**COMMERCIAL GENERAL LIABILITY**
**CG 00 64 12 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The following exclusion is added:

This insurance does not apply to:

**WAR**

Injury or damage, however caused, arising, directly or indirectly, out of:

**1.** War, including undeclared or civil war; or

**2.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

CG 00 64 12 02   *Archive Copy* © ISO Properties, Inc., 2002

**Page 1 of 1**   □

POLICY NUMBER: GL     071-41-27

COMMERCIAL GENERAL LIABILITY<br>CG 02 24 10 93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARLIER  NOTICE  OF  CANCELLATION
# PROVIDED  BY  US

This endorsement  modifies  insurance  provided  under  the  following:

COMMERCIAL GENERAL LIABILITY COVERAGE  PART
LIQUOR LIABILITY COVERAGE  PART
POLLUTION LIABILITY COVERAGE  PART
PRODUCTS/COMPLETED  OPERATIONS  LIABILITY COVERAGE  PART

### SCHEDULE

**Number of Days' Notice**        60

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations  as  applicable  to  this  endorsement.)

For any statutorily permitted  reason  other  than nonpayment  of  premium,  the  number of days required for  notice  of  cancellation,  as  provided  in paragraph  **2.**  of  either  the CANCELLATION Common Policy Condition  or  as  amended  by  an  applicable  state cancellation  endorsement,  is  increased  to  the  number of  days  shown  in  the  Schedule  above.

CG  02  24  10  93             Copyright,  Insurance  Services  Office,  Inc.,  1992             Page 1 of 1     □

*Archive Copy*

EZSERVE000527

POLICY NUMBER: GL   071-41-27

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following: This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of. "pollutants".

EZSERVE000528

POLICY NUMBER: GL    071-41-27

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - FAILURE TO SUPPLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" arising out of the failure of any insured to adequately supply gas, oil, water, electricity or steam.

This exclusion does not apply if the failure to supply results from the sudden and accidental injury to tangible property owned or used by any insured to procure, produce, process or transmit the gas, oil, water, electricity or steam.

CG 22 50 11 88          Copyright, Insurance Services Office, Inc., 1984, 1988          Page 1 of 1
*Archive Copy*

EZSERVE000529

POLICY NUMBER: GL   071-41-27

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

EZSERVE000530

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

EZSERVE000531

POLICY NUMBER: GL   071-41-27                                    IL 02 65 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HAWAII CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM - FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

We may cancel this policy prior to the expiration of the agreed term, or one year from the effective date of the policy or renewal, whichever is less, only for one or more of the following reasons, by delivering to the first Named Insured written notice of cancellation, at least 30 days before the effective date of cancellation:

**1.** Nonpayment of premium;

**2.** Fraud or material misrepresentation;

**3.** Substantial increase in the risk hazard, except to the extent that we should have reasonably foreseen the change when entering into the contract;

**4.** Substantial breaches of contractual duties, conditions or warranties;

**5.** Violation of any local fire, health or safety statute or ordinance;

**6.** Conviction of the Named Insured for a crime having as one of its necessary elements, an act increasing any hazard that is insured against;

**7.** Determination by the insurance commissioner that the continuation of the policy places us in violation of Chapter 431, Hawaii Revised Statutes; or

**8.** Any good faith reason with the approval of the insurance commissioner.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL OF POLICY**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, stating the reasons for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

EZSERVE000532

POLICY NUMBER: GL   071-41-27                                          IL 02 65 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HAWAII CHANGES - CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM - FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

We may cancel this policy prior to the expiration of the agreed term, or one year from the effective date of the policy or renewal, whichever is less, only for one or more of the following reasons, by delivering to the first Named Insured written notice of cancellation, at least 30 days before the effective date of cancellation:

1. Nonpayment of premium;

2. Fraud or material misrepresentation;

3. Substantial increase in the risk hazard, except to the extent that we should have reasonably foreseen the change when entering into the contract;

4. Substantial breaches of contractual duties, conditions or warranties;

5. Violation of any local fire, health or safety statute or ordinance;

6. Conviction of the Named Insured for a crime having as one of its necessary elements, an

act increasing any hazard that is insured against;

7. Determination by the insurance commissioner that the continuation of the policy places us in violation of Chapter 431, Hawaii Revised Statutes; or

8. Any good faith reason with the approval of the insurance commissioner.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL OF POLICY**

1. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, stating the reasons for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

IL 02 65 07 02   *Archive Copy* © ISO Properties, Inc., 2001                    Page 1 of 1   □

ENDORSEMENT

This endorsement, effective 12:01 A.M.  04/01/2005          forms a part of

policy No. GL   071-41-27      issued to ALOHA PETROLEUM,   LTD.

by AMERICAN HOME ASSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY**

**TOTAL LEAD EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY**

This insurance does not apply to any "bodily injury", "property damage", "personal injury", or "advertising injury", or any other loss, cost or expense arising out of the presence, ingestion, inhalation, or absorption of or exposure to lead in any form or products containing lead.

_Archive Copy_

58332 (7/93)

- - - - - - - - - - - - - - - - - - - - - - -
**AUTHORIZED REPRESENTATIVE**

EZSERVE000534

ENDORSEMENT

This endorsement, effective 12:01 A.M. 04/01/2005          forms a part of

policy No. GL      071-41-27        issued to **ALOHA PETROLEUM, LTD.**

by **AMERICAN HOME ASSURANCE COMPANY**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### BROAD FORM NAMED INSURED

*This endorsement modifies insurance provided under the following:*

   COMMERCIAL GENERAL LIABILITY COVERAGE FORM
   BUSINESS AUTO COVERAGE FORM
   TRUCKERS COVERAGE FORM

**Policy Declarations, "Named Insured" is revised to include:**

"Named Insured" means the person or organization first named as the Named Insured on the Declarations Page of this policy (the "First Named Insured"). Named Insured also includes (1) any other person or organization named as a Named Insured on the Declarations Page; (2) any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any insured named as the Named Insured on the Declarations Page has more than 50% ownership interest in or exercises management or financial control over at the inception date of this policy, provided such subsidiary, associated, affiliated, allied or acquired company or corporation and their operations have been declared to us prior to the inception date of this policy.

———————————————————
AUTHORIZED REPRESENTATIVE

61944 (2/95)    *Archive Copy*

EZSERVE000535

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.   04/01/2005            forms a part of

policy No. GL      071-41-27        issued to  ALOHA PETROLEUM,   LTD.

by AMERICAN HOME ASSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FUNGUS  EXCLUSION**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", or any other loss, cost or expense, including but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.    Any "fungus(i)", "molds(s)", mildew or yeast, or

    b.    Any "spore(s)" or toxins created or produced by or emanating from such "fungus(i)", "mold(s)", mildew or yeast, or

    c.    Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

    d.    Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including "mold(s)", rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and "fungi" that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

**ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.**

_____
**Authorized Representative or
Countersignature (in States Where
Applicable)**

**78689 (8/01)**     *Archive Copy*          **Page 1 of 1**

EZSERVE000536

ENDORSEMENT

This endorsement, effective 12:01 A.M. 04/01/2005          forms a part of


policy No. GL     071-41-27        issued to ALOHA PETROLEUM, LTD.


by AMERICAN HOME ASSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS AND SILICA EXCLUSION ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM


**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions,** is amended to add the following exclusions:

#### P.  Asbestos

"Bodily injury" or "Property damage" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

#### Q.  Silica

"Bodily injury" or "property damage" or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

**Section I. - Coverages, Coverage B.- Personal and Advertising Injury Liability, 2. - Exclusions** is amended to add the following exclusions:

#### O.  Asbestos

"Personal and Advertising Injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "personal and advertising injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

#### P.  Silica

"Personal and Advertising Injury" or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "personal and advertising injury" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

All other terms, conditions and exclusions of the policy shall remain unchanged.


_____
Authorized Representative or
Countersignature (in States Where
Applicable)

82540 (6/03)  *Archive Copy*

Page 1 of 1

EZSERVE000537

ENDORSEMENT

This endorsement, effective 12:01 A.M.   **04/01/2005**      forms a part of

policy No. GL      **071-41-27**      issued to   **ALOHA PETROLEUM, LTD.**

by **AMERICAN HOME ASSURANCE COMPANY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT  CAREFULLY

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**NOTICE:  EXCEPT  TO  SUCH  EXTENT  AS  MAY  OTHERWISE  BE  PROVIDED  HEREIN,  THE COVERAGE  OF  THIS  ENDORSEMENT  IS  GENERALLY  LIMITED  TO  LIABILITY  FOR  ONLY  THOSE CLAIMS  THAT  ARE  FIRST  MADE  AGAINST  THE  INSURED  DURING  THE  POLICY  PERIOD  AND REPORTED  IN  WRITING  TO  THE  INSURER  PURSUANT  TO  THE  TERMS  HEREIN.   PLEASE  READ THIS  ENDORSEMENT  CAREFULLY  AND  DISCUSS  THE  COVERAGE  THEREUNDER  WITH  YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF INSURANCE AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED BY US FOR LEGAL DEFENSE.**

## EMPLOYEE BENEFITS LIABILITY INSURANCE
## PROVIDES CLAIMS MADE COVERAGE - Please read carefully

### ADDITIONAL DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1. | LIMIT OF INSURANCE FOR EMPLOYEE BENEFITS LIABILITY INSURANCE<br>Any payments made pursuant to this endorsement will be subject to, and erode the General Aggregate Limit of the policy to which this endorsement is attached.<br>$   **1,000,000**   , Each Wrongful Act or Series Of Related Wrongful Acts Limit | |
| 2. | SELF INSURED RETENTION: ☐<br>(Applicable, if checked) | $               , Each Wrongful act or series of related Wrongful acts.  If applicable, then the insurance provided by this endorsement will only apply in excess of the listed Self Insured Retention (hereinafter "Retained Limit").  Additionally, we shall have the right, but not the duty, to defend any suit against the Insured seeking damages on account of a Wrongful act or series of related Wrongful acts. |
| 3. | DEDUCTIBLE: ☒<br>(Applicable, if checked) | $   **1,000**, Each Wrongful act or series of related Wrongful acts. If applicable, then the Deductible is subject to the terms and conditions of the Deductible Endorsement - Form A (Form No.               ) that is attached to the policy under Endorsement No.                 . |
| 4. | RETROACTIVE DATE: | |
| 5. | ESTIMATED ANNUAL PREMIUM: | $ INCLUDED |

A.   For the purpose of coverage provided by this endorsement only, **SECTION I - COVERAGES,** is amended with the addition of the following:

COVERAGE - EMPLOYEE BENEFITS LIABILITY

**51767** (04/02)        *Archive Copy*        (Page 1 of 9)

EZSERVE000538

1.   Insuring Agreement

a.   We will pay the Insured for those sums which the Insured shall become legally obligated to pay as damages because of any "claim" made against the Insured due to any "Wrongful act" of the Insured, or any other person for whose acts the Insured is legally liable, in the "administration" of the "employee benefit program" of the Insured.

Except with respect to a Retained Limit as indicated in Item 2 of the Additional Declarations, we have the right and duty to defend any suit against the Insured seeking damages on account of such negligent act, error or omission, even if any of the allegations of the suit are groundless, false or fraudulent, and we may make such investigation and settlement of any "claim" or suit as we deem expedient. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.
But:

1)   The amount we will pay for damages is limited as described in Section D. 1. of this endorsement headed Limits of Insurance;

2)   the amounts we pay for "allocated loss adjustment expenses" will reduce the Limit of Insurance available, as provided under Section D. 1. of this endorsement headed Limits of Insurance; and

3)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements, or "allocated loss adjustment expenses".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section C. of this endorsement.

b.   The insurance provided by this endorsement applies to damages only if:

1)   the damages did not occur before the Retroactive Date, if any, shown in Item 4. of the Additional Declarations or after the end of the policy period; and

2)   the "claim" for damages covered by this endorsement is first made against the Insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Section E., 2. Optional Extended Reporting Period.

c.   A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

1)   When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

2)   When we make settlement in accordance with Paragraph 1.a. above

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the "claim".

d.   All "claims" for damages made by an "employee" because of any "Wrongful act" or series of related "Wrongful acts", including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2.   Exclusions

This endorsement does not apply to:

a.   Dishonest, Fraudulent, Criminal Or Malicious Act.

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b.   **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c.   **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

d.   **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e.   **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

1)   Failure of any investment to perform;

2)   Errors in providing information on past performance of investment vehicles; or

3)   Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program"

f.   **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g.   **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h.   **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i.   **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the internal Revenue Code or any similar state or local law.

j.   **Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

k.   **Failure to Maintain Insurance or Bond**

Any "claim" made against the Insured based on or attributable to any failure or omission on the part of the Insured to effect and maintain insurance or bonding for Plan Property or Assets.

B. For purposes of the coverage provided by this endorsement only, **Section II - Who Is An Insured** is deleted in its entirety and replaced with the following:

Insured: as used in this endorsement, means the Named Insured, provided that (a) if the Named Insured is designated as an individual, the insurance applies only to the conduct of a business of which he is the sole proprietor and (b) the unqualified word Insured also includes the following:

A. If the Named Insured is or includes a partnership or joint venture, any partner or member thereof but only with respect to his liability as such;

B. Any executive officer, director or stockholder of the Named Insured while acting within the scope of his duties as such;

C. Any employee, provided such employee is authorized to act in the "administration" of the "Employee Benefits Program" of the Named Insured.

C. For the purposes of the coverage provided by this endorsement only, **SECTION I - SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**, is deleted in its entirety and replaced with the following:

ALLOCATED LOSS ADJUSTMENT EXPENSES - EMPLOYEE BENEFITS LIABILITY COVERAGE

a. If a Retention Amount is shown in Item 2. of the Additional Declarations above, you are responsible for all "Allocated Loss Adjustment Expenses" we pay as Supplementary Payments, according to the election indicated by an "X" below. If no election is indicated, election i. shall apply.

☒ i. All "Allocated Loss Adjustment Expenses" up to the Retained Limit. However, the most you are responsible for with respect to damages and "Allocated Loss Adjustment Expenses" combined shall not exceed the Retained Limit.

☐ ii. All "Allocated Loss Adjustment Expenses".

☐ iii. A part of "Allocated Loss Adjustment Expenses". That part will be calculated by dividing the smaller of the Retained Limit or the damages you pay by the damages we pay. If we pay no damages, you are responsible for all "Allocated Loss Adjustment Expenses" up to the applicable Retained Limit and        % of all remaining "Allocated Loss Adjustment Expenses".

☐ iv. No "Allocated Loss Adjustment Expenses".

b. If a Deductible Amount is shown in Item 3. of the Additional Declarations above, **you must reimburse us** for all "Allocated Loss Adjustment Expense" we pay as Supplementary Payments, according to the election indicated in the Deductible Endorsement that is referred to in Item 3 of the Additional Declarations.

c. With regard to either a Retained Limit or a Deductible:

(1) your duty to pay for "Allocated Loss Adjustment Expenses" applies separately to each "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured; and

(2) All payments made by us for "Allocated Loss Adjustment Expenses" will be within the Limits of Insurance as provided under Section D. 1. of this endorsement headed Limits of Insurance.

D. For the purposes of the coverage provided by this endorsement, **Section III - Limits Of Insurance** is revised as follows:

1. Limits Of Insurance

a.  The Limits of Insurance shown in the Additional Declarations and the rules below fix the most we will pay regardless of the number of:

    1)  Insureds;

    2)  "Claims" made or "suits" brought;

    3)  Persons or organizations making "claims" or bringing "suits";

    4)  "Wrongful act" or series of related "Wrongful acts"; or

    5)  Benefits included in your "employee benefit program".

b.  The General Aggregate Limit as described in **Section III - Limits Of Insurance, 2.** is amended to include the following paragraph:

    d.  All damages and all associated "allocated loss adjustment expenses" that we pay because of a "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured.

c.  Subject to the General Aggregate Limit, the Each Wrongful Act or Series Of Related Wrongful Acts Limit as stated in Item 1. of the Additional Declarations is the most we will pay for all damages and all associated "allocated loss adjustment expenses" due to any one "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured.

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2.  Retention Amount

If a Retention Amount is shown in Item 2. of the Additional Declarations above, the Limits of Insurance for the Coverage provided by this endorsement will apply in excess of the Retained Limit as stated in Item 2. of the Additional Declarations.

Subject to additional "Allocated Loss Adjustment Expenses", the Retained Limit is the most an insured will pay for all damages due to any one "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured.

3.  Deductible

If a Deductible Amount is shown in Item 3. of the Additional Declarations above, **you must reimburse us** for all damages due to any one "Wrongful act" or series of related "Wrongful acts" committed in the "administration" of the "employee benefit program" of the Insured and any "Allocated Loss Adjustment Expense" we pay as Supplementary Payments, according to the terms and conditions as provided for in the Deductible Endorsement that is referred to in Item 3 of the Additional Declarations.

E.  For the purpose of coverage provided by this endorsement only, **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** is amended with the addition of the following conditions:

EZSERVE000542

1.   PREMIUM

The premium stated in the ADDITIONAL DECLARATIONS is an estimated premium only.  Upon termination of each annual period of this endorsement the Insured, on request, will furnish us a statement of the total number of employees at the end of the period. The earned premium shall be computed on the average of the number of employees at the end of the coverage period and that stated in the ADDITIONAL DECLARATIONS.   If the earned premium thus computed exceeds the estimated premium paid, the Insured shall pay the excess to us; if less, we shall return to the Insured the unearned portion paid by such Insured.

2.   OPTIONAL EXTENDED REPORTING ENDORSEMENT

The coverage under the Employee Benefits Liability Endorsement may end because one of us chooses to cancel it or not renew it.  If this is not the result of non-payment of the premium, then you have the right to purchase an Extended Reporting Period Endorsement. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided.  It only extends the time to report covered claims that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. The "claim" must first be made against an Insured and reported to us within 3 years after the Employee Benefits Liability Endorsement ends and while the reporting endorsement is in effect.

To obtain this reporting endorsement you must request it in writing and pay the additional premium within 30 days after this agreement ends.  If we don't receive written notice and payment within this period, the Extended Reporting Period will not go into effect. Additionally, you may not exercise this right at a later date.

We'll sell you this endorsement for the additional premium.  This additional premium will not exceed 200% of the annual premium for the Employee Benefits Liability Endorsement.  Once you pay the premium we can't cancel the endorsement.  We will determine the additional premium taking into account the following:

a.   The exposures insured;
b.   Previous types and amounts of insurance;
c.   Limits of Liability available under the Employee Benefit Liability Insurance for future payment of damages; and
d.   Other related factors.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

The optional Extended Reporting Endorsement does not reinstate or increase the Limits of Liability applicable to any "claim" to which The Employee Benefits Liability Endorsement applies.

3.   CONFORMITY WITH STATUTE

Terms of this endorsement which are in conflict with the statute of the state wherein this endorsement is issued are hereby amended to conform to such statutes.

F.   Special Conditions relating to the Retained Limit (if applicable)

1.   With respect to the coverage provided by this endorsement only, Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, "claim" or Suit, a. is amended to read:

51767 (04/02)        **Archive Copy**        (Page 6 of 9)

A.  Periodic Notices: on a _____ basis, you must provide us with a written summary (loss run) of all "wrongful acts", "claims", or "suits" which have or may result in payments within the Retained Limit.

This written summary must show:

1.  The date of the "wrongful act"; and
2.  A description of the damage, and
3.  The amount paid or reserved, including "allocated loss adjustment expense", resulting from the "wrongful act", "claim" or "suit".

B.  Individual Notices of a "wrongful act": in addition to the Periodic Notices provided for in A. above, you must see to it that we are notified as soon as practicable of any "wrongful act" which may result in a "claim". Knowledge of a "wrongful act" by your agent, your servant, or your employee will not in itself constitute knowledge to you unless the Director of Risk Management (or one with similar or equivalent title) or his/her designee, at the address shown in the policy declarations, will have received such notice.  To the extent possible notice should include how, when and where the "wrongful act" took place and the nature of any damage arising out of the "wrongful act". You must provide us with any and all additional information, material and/or data, subsequent to the original notice, as it becomes available.

2.  Claims Administration

A.  You will employ and pay, without any reimbursement from us, a firm acceptable to us for the purpose of providing claim services (Claims Administrator).  In the event of cancellation, expiration or revision of the contract between you and the self-insurance service company, you will notify us within ten (10) days of the cancellation, expiration or revision.

B.  Loss settlements made by you or the Claims Administrator will be within the terms, conditions and limits of the policy.

C.  There will be no reduction of the Retained Limit because of payment of "claims" or "suits" arising from "claims" or "suits" for which coverage is not afforded to by the policy.

3.  Bankruptcy

Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the Retained Limit will not increase our obligations under the policy.  In the event there is insurance, whether or not applicable to an "wrongful act", "claim" or "suit" within the Retained Limit, you will continue to be responsible for the full amount of the Retained Limit before the limits of insurance under this policy apply.  In no case will we be required to pay the Retained Limit or any portion thereof.  Our obligations will attach only when the entire amount of the Retained Limit has been paid and then only in excess of the Retained Limit and not in excess of the total limit of insurance adjusted for any reduction in the aggregate limit of our liability.

G.  For the purpose of coverage provided by this endorsement only, **SECTION V - DEFINITIONS**, is amended with the addition of the following definitions:

1.  "Administration": shall mean:
    A.  Giving counsel to employees with respect to the Employee benefit program;
    B.  Interpreting the Employee benefit program;
    C.  Handling of records in connection with the Employee benefit program;
    D.  Effective enrollment, termination or cancellation of employees under the "Employee benefit program", provided all are acts which are authorized by the Named Insured.

51767 (04/02)          *Archive Copy*          (Page 7 of 9)

EZSERVE000544

2.  "Allocated Loss Adjustment Expenses" means all fees for service of process and court costs and court expenses; pre- and post-judgment interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a "claim" or a "suit" against you, or to the protection and perfection of your or our subrogation rights.

"Allocated Loss Adjustment Expenses" shall not include our general overhead, the salary and employee benefits of any of our employees, nor the fees of any attorney who is our employee or under our permanent retainer; nor the fees of any attorney we retain to provide counsel to us about our obligations, if any, under any policy issued by us or our affiliated company(ies), with respect to a "claim" or "suit" against you.

3.  "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

4.  "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

5.  "Employee benefit program": means a program providing some or all of the following benefits to "employees" of the Insured, whether provided through a cafeteria plan or otherwise:

    (a)  group life insurance; group accident or health insurance; dental, vision and hearing plans; provided that no one other than an "employee" of the Insured may subscribe to such benefits and such benefits are made generally available to those "employees" of the Insured who satisfy the plan's eligibility requirements;

    (b)  profit sharing plans, employee savings plans, pension plans, employee stock subscription plans, provided that no one other than an "employee" of the Insured may subscribe to such benefits and such benefits are made generally available to all "employees" of the Insured who are eligible under the plan for such benefits;

    (c)  workmen's compensation, unemployment insurance, social security benefits, disability benefits;

    (d)  Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    (e)  Any other similar benefits designated in the Schedule or added thereto by endorsement.

6.  "Wrongful act": means any actual or alleged negligent act, error or omission in the "administration" of the Employee Benefits Plan.

H.  For the purpose of coverage provided by this endorsement only, Definitions 5. and 18. in **SECTION V - DEFINITIONS** are replaced by the following:

5.  "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18.  "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

    a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

All other terms, exclusions, and conditions of this policy remain unchanged.

Authorized Representative or
**Countersignature (in States Where
Applicable)**

51767 (04/02)          *Archive Copy*          (Page 9 of 9)

EZSERVE000546

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.  04/01/2005          forms a part of


policy No. GL      071-41-27        issued to  **ALOHA PETROLEUM,   LTD.**


by **AMERICAN HOME ASSURANCE COMPANY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED - WHERE REQUIRED UNDER CONTRACT OR AGREEMENT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section II - Who is an Insured, 1.,** is amended to add:

f)      Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by or rented to you.  However, the insurance provided will not exceed the lesser of:

1.      The coverage and/or limits of this policy, or

2.      The coverage and/or limits required by said contract or agreement.

_____
**Authorized Representative or
Countersignature (in States Where
Applicable)**

**61712 (9/01)**  *Archive Copy*

EZSERVE000547

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.  04/01/2005          forms a part of


policy No. GL      071-41-27       issued to  **ALOHA PETROLEUM,   LTD.**


by **AMERICAN HOME ASSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**RADIOACTIVE MATTER EXCLUSION**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions,** is amended to add:

Any liability for "bodily injury" or "property damage" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.


**Section I. - Coverages, Coverage B.- Personal and Advertising Liability, 2. - Exclusions,** is amended to add:

Arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

_____
**Authorized Representative or
Countersignature (in States Where
Applicable)**

62898 (9/01)  *Archive Copy*

EZSERVE000548

ENDORSEMENT

This endorsement, effective 12:01 A.M. 04/01/2005          forms a part of

policy No. GL     071-41-27      issued to ALOHA PETROLEUM, LTD.

by AMERICAN HOME ASSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MTBE and Other Fuel Oxygenates Exclusion
## Applicable to Coverages A, B and C

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Section I - COVERAGES is amended to include the following additional exclusion:

**MTBE and Other Fuel Oxygenates**

Under Coverages A, B and C, this insurance does not apply to any liability arising out of methyl tertiary-butyl ether (MTBE) and other fuel oxygenates including, but not limited to, the following:

1.  Ether oxygenates, such as ethyl tertiary-butyl ether (ETBE), tertiary-amyl methyl ether (TAME), tertiary-amyl ethyl ether (TAEE), diisopropyl ether (DIPE), and dimethyl ether (DME); and

2.  Alcohol oxygenates, such as ethanol (ethyl alcohol), methanol (methyl alcohol), and tertiary-butyl alcohol (TBA).

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion shall supercede any such coverage.

All other terms, definitions, conditions and exclusions of this policy shall remain unchanged.

_____
**Authorized Representative or
Countersignature (in States Where
Applicable)**

80521 (7/02)  *Archive Copy*