IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALOHA PETROLEUM, LTD., | CIV. NO. 22-00372 JAO-WRP |
| Plaintiff, | ORDER CERTIFYING QUESTIONS TO THE HAWAI'I SUPREME COURT |
| vs. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and AMERICAN HOME ASSURANCE COMPANY, | |
| Defendants. | |

**ORDER CERTIFYING QUESTIONS TO THE
HAWAI'I SUPREME COURT**

In this insurance coverage case, Plaintiff Aloha Petroleum, Ltd. ("Aloha")

asserts that Defendants National Union Fire Insurance Company of Pittsburgh, PA,

and American Home Assurance Company (collectively, "AIG"[1]) have a duty to

defend Aloha against a pair of underlying lawsuits in Hawai'i state courts.  ECF

No. 1.  Aloha and AIG filed cross-motions for partial summary judgment on the

---

[1]  Both Defendants are wholly owned subsidiaries of AIG Property Casualty US
Inc., and are jointly represented by the same attorneys.  *Compare* ECF No. 60, *with*
ECF No. 61.  Further, both refer to their insurance contracts with Aloha as the
"AIG policies."  ECF No. 56-1 at 10.

purely legal issue of duty to defend.  ECF Nos. 54, 56.[2]  The Court has concluded

that the parties' dispute hinges on whether recklessness can amount to an

"accident," as that term has been defined by the Hawaiʻi Supreme Court, and if so,

whether greenhouse gas emissions constitute the release or escape of "pollutants,"

i.e., "gaseous" "irritant[s] or contaminant[s]," under the Hawaiʻi Supreme Court's

precedents.  Because these questions of Hawaiʻi law are determinative here, and

because there is no clear controlling precedent in Hawaiʻi judicial decisions, this

Court respectfully certifies these questions to the Hawaiʻi Supreme Court:

> 1)  For an insurance policy defining a covered "occurrence" in part as an "accident," can an "accident" include recklessness?
>
> 2)  For an "occurrence" insurance policy excluding coverage of "pollution" damages, are greenhouse gases "pollutants," i.e., "gaseous" "irritant[s] or contaminant[s], including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"?

## I.    BACKGROUND

As background, the Court briefly describes the prior proceedings in this case

and the relevant facts.  *See* Haw. R. App. P. 13(b).  Aloha claims that the AIG

insurers breached their insurance contracts by failing to defend Aloha against two

---

[2]  The cross-motions seek "partial" summary judgment because they cover only twelve of the fifteen insurance policies identified in the Complaint; the parties were unable to locate copies of the three remaining policies.  *See* ECF No. 54 at 3 n.1.

climate change lawsuits:  *County of Maui v. Sunoco LP*, No. CV-20-0000283, Dkt. No. 1 (Haw. 2d Cir. filed Oct. 12, 2020) (the "*Maui* complaint," available at ECF No. 55-17), and *City and County of Honolulu v. Sunoco LP*, No. CV-20-0000380, Dkt. No. 1 (Haw. 1st Cir. filed Mar. 22, 2021) (the "*Honolulu* complaint," available at ECF No. 55-16) (collectively, the "underlying lawsuits").  Aloha requests a declaratory judgment that the AIG insurers have a duty to defend the underlying lawsuits.  *See* ECF No. 47 at 2, 25.

The underlying lawsuits are significantly similar in scope.  They assert the same legal claims against twenty corporate members of the fossil fuel industry—including Aloha—in complaints that span over 100 pages.  The underlying defendants allegedly "kn[ew] for nearly half a century that unrestricted production and use of [their] fossil fuel products create[d] greenhouse gas pollution that warms the planet and changes our climate."  *Maui* complaint at ¶ 1; *Honolulu* complaint at ¶ 1; *see also Maui* complaint at ¶ 172 (describing the gradual nature of climate change, where there is a "lag time between emissions and sea level rise"); *Honolulu* complaint at ¶ 150.b (same).  The complaints further allege that, despite that knowledge, the defendants "continued to wrongfully market and promote heavy fossil fuel use [in the counties] and mounted a campaign to obscure the connection between their fossil fuel products and the climate crisis." *Maui* complaint at ¶ 140; *Honolulu* complaint at ¶ 128.

3

Importantly, the complaints aver that the "impacts of [the defendants'] fossil fuel products on the Earth's climate and associated harms to people and communities"—including tangible property harms to the counties—were "foreseeable" to the defendants. *Maui* complaint at ¶ 103; *Honolulu* complaint at 94; *see also Maui* complaint at ¶ 148 (alleging the defendants' "knowledge of the foreseeable harms associated with the consumption of [their] fossil fuel products"); *Honolulu* complaint at ¶ 136 (same). Thus, the crux of the underlying lawsuits is that Aloha disregarded known risks of harm to the counties when selling its fuel products that would inevitably combust and produce greenhouse gases, particularly carbon dioxide, thereby changing the climate and causing harm to the counties.

In their cross-motions, the parties dispute whether AIG has a duty to defend Aloha against the underlying lawsuits under certain AIG insurance policies. *See* ECF No. 54-1 at 7; ECF No. 56-1 at 10–11.[3] The policies cover "occurrences" causing property damage during the policy period. An "occurrence" is defined— as in many other commercial general liability policies—to mean an "accident," in relevant part. But an "accident" is not further defined. Also, most of the policies exclude coverage for the "release or escape of pollutants" causing property

---

[3] The parties also dispute indemnification, but that is not raised in the pending cross-motions. *See* ECF 56-1 at 10 ("At the parties' request, the Court deferred discovery on the duty to indemnify until after the duty to defend issues are resolved." (citing ECF Nos. 38, 46, 51)).

damage, wherein a "pollutant" is "any . . . gaseous . . . irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  The parties agree on that much.  *See* ECF No. 55 at ¶¶ 13, 18, 19, 23–25 (Aloha's Separate and Concise Statement of Facts); *see also* ECF No. 65 (AIG admitting to the relevant portions of the cited paragraphs).  They also agree that Hawaiʻi law controls the meaning of "accident" and the interpretation of "gaseous . . . irritant or contaminant."  *See* ECF No. 56-1 at 11 n.5 ("The AIG Insurers do not challenge application of Hawaii law in this case.").

### 1)     Recklessness and "Accident"

The Court heard arguments on the cross-motions on August 24, 2023.  ECF No. 68.  When arguing that the term "accident" includes recklessness—and thus in favor of AIG having a duty to defend the underlying lawsuits—Aloha focused on the following language from the Hawaiʻi Supreme Court's opinion in *Tri-S Corp. v. Western World Insurance Co.*, 110 Hawaiʻi 473, 135 P.3d 82 (2006):  There is a duty to defend "because the possibility exists that [the insured] could be found liable for *recklessness*, which does not involve intent or expectation of injury *and is thus a covered occurrence under the policy*."  *Id.* at 494, 135 P.3d at 103 (emphases added).  So, according to Aloha, *Tri-S* holds that recklessness can be covered under an "occurrence," i.e., "accident," policy.

AIG disagreed, arguing that *Tri-S* is inapplicable to the parties' dispute over a duty to defend.  According to AIG, *Tri-S* merely holds that recklessness does not satisfy—i.e., is a lower mental state than—the "expected or intended" exclusion clause disputed in that case.  What *Tri-S* does not address, according to AIG, is whether recklessness can satisfy the threshold condition of an "accident," which has been defined in multiple Hawaiʻi Supreme Court decisions to require injuries that are neither the "expected [n]or reasonably foreseeable result of the insured's own intentional acts or omissions," *e.g.*, *AIG Haw. Ins. Co. v. Est. of Caraang*, 74 Haw. 620, 636, 851 P.2d 321, 329 (1993).  AIG thus reasoned that recklessness cannot be an "accident" under *Caraang*'s definition, because recklessness traditionally requires a risk of foreseeable harm (that is consciously disregarded by the tortfeasor).

### 2)   The Pollution Exclusion and Greenhouse Gases

When arguing against the pollution exclusion, Aloha drew a distinction between combustion-produced greenhouse gases and "traditional environmental pollution," e.g., a widget factory discharging lead into the ambient air.  According to Aloha, "traditional environmental pollution" is paradigmatic pollution to be excluded, while greenhouse gases are well beyond the paradigm, both figuratively and literally, as the greenhouse effect occurs miles up in the atmosphere.  Aloha ultimately stressed that, under Hawaiʻi law, it is an unsettled question whether

pollution exclusions extend beyond traditional environmental pollution to cover micro contamination, such as a plumber pouring noxious chemicals down a drain, or to cover gradual-effects models, such as the greenhouse effects alleged in the underlying lawsuits.  Such unsettled questions, Aloha argued, must be decided in favor of a duty to defend because of the "legal uncertainty" principle embodied by *Sentinel Insurance Co. v. First Insurance Co. of Hawaiʻi*, 76 Hawaiʻi 277, 295, 875 P.2d 894, 912 (1994).

AIG counterargued that the "greenhouse gas pollution" alleged in the underlying lawsuits is not as far from "traditional environmental pollution" as Aloha contends.  The average person on the street would certainly believe that greenhouse gases are polluting the environment, according to AIG.  And to the extent greenhouse gases are beyond the pale of "traditional environmental pollution," that is no barrier to the exclusion clause, AIG argued, because multiple decisions from this District have embraced definitions of "pollutants" extending beyond traditional environmental pollution.  AIG specifically cited *Apana v. TIG Insurance Co.*, 504 F. Supp. 2d 998 (D. Haw. 2007), a case in which District Judge Seabright applied a pollution exclusion to injuries caused by inhaling the fumes of an extremely strong drain cleaner that was negligently poured down a drain.  *See id.* at 1006 (finding no indemnification based on exclusion).  AIG also cited *Allen v. Scottsdale Insurance Co.*, 307 F. Supp. 2d 1170 (D. Haw. 2004), a case in which

District Judge Ezra applied a pollution exclusion to injuries allegedly caused by breathing in dust particles emanating from a concrete recycling plant. *See id.* at 1178–79 (finding no duty to defend based on exclusion). AIG further highlighted that greenhouse gases qualify as air pollutants under the State's Air Pollution Control statutes, Haw. Rev. Stat. § 342B-1.

## II.    LEGAL STANDARD

The Hawaiʻi Supreme Court has jurisdiction and power "[t]o answer, in its discretion, any question of law reserved by a circuit court, the land court, or the tax appeal court, or any question or proposition of law certified to it by a federal district or appellate court if the supreme court shall so provide by rule[.]" Haw. Rev. Stat. § 602-5(a)(2). "When a federal district or appellate court certifies to the Hawaiʻi Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaiʻi that is determinative of the cause and that there is no clear controlling precedent in the Hawaiʻi judicial decisions, the Hawaiʻi Supreme Court may answer the certified question by written opinion." Haw. R. App. P. 13(a). The Ninth Circuit has previously certified duty-to-defend questions to the Hawaiʻi Supreme Court. *See, e.g.*, *Apana v. TIG Ins. Co.*, 574 F.3d 679, 682 (9th Cir. 2009).

8

### III.   ORDER

For the reasons discussed below, this Court respectfully certifies the following questions to the Hawaiʻi Supreme Court:

1) For an insurance policy defining a covered "occurrence" in part as an "accident," can an "accident" include recklessness?

2) For an "occurrence" insurance policy excluding coverage of "pollution" damages, are greenhouse gases "pollutants," i.e., "gaseous" "irritant[s] or contaminant[s], including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"?

This Court does not intend the form of the questions to limit the Hawaiʻi Supreme Court's consideration of the issues relevant to disposing of these matters.  If the Hawaiʻi Supreme Court decides to consider the certified questions, it may, of course, reformulate the issues in light of the parties' contentions or other relevant considerations.  The Hawaiʻi Supreme Court may also decline to answer the second question if it answers the first question in the negative.

The Clerk of Court is hereby ordered to transmit a copy of this Order to the Hawaiʻi Supreme Court under the official seal of the United States District Court for the District of Hawaii.  *See* Haw. R. App. P. 13(c).  In addition, the Clerk is ordered to provide "original or copies of all or any portion of the record" in this case as "[t]he Hawaiʻi Supreme Court may, in its discretion, require."  *Id.*

The parties shall notify this Court within one week after the Hawaiʻi Supreme Court accepts or rejects certification.  If the Hawaiʻi Supreme Court

9

accepts the certified questions, the parties shall file a joint status report to this

Court every six months after the date of acceptance, or more frequently if so

warranted.

## IV.   DISCUSSION

The Court provides a brief discussion of the circumstances out of which the

certified questions arise.  As mentioned above, this is a duty-to-defend case, and

there is a determinative dispute over whether Aloha could potentially be liable for

an "accident" in the underlying lawsuits.  *See Hawaiian Holiday Macadamia Nut

Co. v. Indus. Indem. Co.*, 76 Hawai'i 166, 169, 872 P.2d 230, 233 (1994) ("The

duty arises whenever there is a potential for indemnification liability of the insurer

to the insured.").  If Aloha could potentially be held liable for an "accident," there

is a second determinative dispute over whether that liability could potentially be

premised on something other than the release or escape of "pollutants."  *See Tri-S*,

110 Hawai'i at 494, 135 P.3d at 103 (applying the same potentiality/possibility

standard in an exclusion analysis).

"Hawaii adheres to the 'complaint allegation rule'" for duty to defend

inquiries.  *Burlington Ins. Co. v. Oceanic Design & Const., Inc.*, 383 F.3d 940, 944

(9th Cir. 2004) (quoting *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85

Hawai'i 286, 291, 944 P.2d 83, 88 (App. 1997)).  "The focus is on the alleged

claims and facts."  *Id.*; *see also Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawai'i

10

398, 417, 992 P.2d 93, 112 (2000).  Factual allegations are particularly important in assessing a duty to defend, for "when the *facts* alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts . . . are insufficient to trigger the insurer's duty to defend."  *Dairy Rd.*, 92 Hawaiʻi at 417, 992 P.2d at 112.

### 1)   Whether an "Accident" Can Include Recklessness

The first determinative question of Hawaiʻi law is whether an "accident" can include recklessness.  The Court summarized the relevant allegations above, *see supra* Part I.  The underlying complaints assert recklessness as a mental state, as well as more culpable mental states, particularly a knowing mental state.  *See, e.g.*, *Maui* complaint at ¶ 212 ("[The] [d]efendants had actual knowledge that their products were defective and dangerous and were and are causing and contributing to the nuisance" affecting the county.).  Assuming that recklessness is a less culpable mental state than knowing, this Court focuses on the allegations of recklessness because reckless behavior is more likely to constitute an "accident" than knowing behavior.  *Cf. First Ins. Co. of Haw. v. State, by Minami*, 66 Haw. 413, 417, 665 P.2d 648, 652 (1983) ("[W]here a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to

accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.").

And so, the duty-to-defend inquiry in this case turns on the relationship between recklessness and "accident."  Resolving that relationship does not depend on the factual context of the AIG policies.  Indeed, the parties agree that "accident" should be interpreted according to Hawaiʻi law, more specifically, according to decisions from the Hawaiʻi Supreme Court that analyze "accident" coverage under occurrence policies.

In attempting to resolve that relationship, this Court has encountered what appears to be a conflict between two lines of Hawaiʻi Supreme Court decisions, with neither line having controlling weight:  *Tri-S* and *Caraang*.

In *Tri-S*, the Hawaiʻi Supreme Court held that an exclusion clause in an occurrence policy did not apply to—i.e., did not exclude coverage for—recklessness.  Specifically, the Supreme Court considered whether a "wilful and wanton" misconduct claim was excepted from coverage by a clause excluding "expected or intended" injuries.  110 Hawaiʻi at 493, 135 P.3d at 102.  "Wilful and wanton" misconduct comprised recklessness, so the Court focused on the recklessness mental state.  *See id.*  The exclusion clause might not apply to the wilful and wanton claim, the Court explained, "because the possibility exists that [the insured] could be found liable for recklessness, which does not involve intent

12

or expectation of injury *and is thus a covered occurrence under the policy*."  *Id.* at 494, 135 P.3d at 103 (emphasis added).  Recklessness is therefore a lower mental state than intent or expectation, as clarified in footnote 8.  That part's not controversial.

What is more interesting is the clause italicized in the above quote.  That clause arguably indicates that the *Tri-S* Court went a step further than just holding that "expected or intended" does not include recklessness.  The Court arguably also held that an "occurrence" can include recklessness.  One might dispute that interpretation by arguing that the Hawaiʻi Supreme Court did not intend to weigh in on the flip-side inquiry—i.e., the threshold question of "accident" coverage— but rather intended to state only that "there's no exclusion," particularly where the parties did not address the question of what constitutes an "accident."  *Cf. id.* at 493, 135 P.3d at 102 (noting the coverage condition of "'occurrences' (i.e., accidents)," but proceeding to analyze the "expected or intended" exclusion from coverage).  This Court finds it difficult, however, to overlook the plain meaning of the *Tri-S* Court's statement that "recklessness . . . is thus a covered occurrence."

If recklessness can be an "occurrence" ("accident") under *Tri-S*, then what to make of the multiple Hawaiʻi Supreme Court decisions defining an "accident" to require injuries that are neither the "expected [n]or *reasonably foreseeable* result of the insured's own intentional acts or omissions"?  *E.g.*, *Caraang*, 74 Haw. at 636,

851 P.2d at 329 (emphasis added); *Hawaiian Holiday*, 76 Hawai'i at 170, 872 P.2d at 234; *see also Burlington*, 383 F.3d at 948 (applying Hawai'i law and reciting the same definition).  *Tri-S* says that an "accident" is not expected, as does *Caraang*, so no conflict there.  The conflict arises from *Tri-S* implying that an "accident" can be the result of recklessness, and *Caraang* saying that an "accident" cannot be "reasonably foreseeable" from the insured's perspective,[4] a standard almost synonymous with the subjective foreseeability required by recklessness.  *See* Haw. Rev. Stat. § 702-206(3) ("(c) A person acts recklessly with respect to a result of his conduct when he *consciously disregards* a substantial and unjustifiable risk that his conduct will cause such a result.  (d) A risk is substantial and unjustifiable . . . if, considering the nature and purpose of the person's conduct and the *circumstances known to him*, the disregard of the risk involves a gross deviation from the standard of conduct[.]"  (emphases added)); *Murphy v. Lovin*, 128 Hawai'i 145, 156 n.15, 284 P.3d 918, 929 n.15 (App. 2011) ("d. Foreseeable risk and reasonable precaution.  Conduct that results in harm to a third person is not negligent or *reckless* unless there is a *foreseeable likelihood that harm will result* from the conduct."  (emphases added) (quoting Restatement (Third) of Agency § 7.05)).

---

[4]  "The question of what is an 'accident' must be determined by addressing the question from the viewpoint of the insured."  *Hawaiian Holiday*, 76 Hawai'i at 170, 872 P.2d at 234.

In short:  if *Tri-S* says recklessness can be an "accident," and if *Caraang*'s definition of "accident" excludes risks of harms reasonably foreseeable from the perspective of the insured—i.e., recklessness—then there is a conflict.

### 2)      Whether Greenhouse Gases are "Pollutants"

If the Hawaiʻi Supreme Court answers the first determinative question in the affirmative—recklessness can be an "accident"—then this Court respectfully requests an answer to the second determinative question of Hawaiʻi law:  whether greenhouse gases are "pollutants," defined in the AIG policies to mean "any . . . gaseous . . . irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

There is language in the AIG policies further qualifying the exclusion of "pollutant" damage:  the damage must be caused by the "release or escape" of pollutants.  The parties might dispute the applicability of the "release or escape" language.  They might also dispute the causation requirement.  But the Court finds neither of those disputes to be close calls—the alleged emissions of greenhouse gases surely satisfy the "release or escape" language, and there are patent allegations of a but-for causal link between the emissions and the counties' harms.

The salient dispute boils down to whether greenhouse gases are "gaseous" "irritant[s] or contaminant[s], including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  Factual allegations relevant to that dispute are, first, that

combusting Aloha's fuel products yields greenhouse gases, principally carbon dioxide, and second, that the greenhouse effect occurs gradually in the atmosphere. Those allegations are not novel, or really even disputable, for they are basic facts of climate change science. The second certified question is thus especially amenable to resolution as a matter of law by the Hawaiʻi Supreme Court.

This Court is not aware of any Hawaiʻi judicial decisions controlling the parties' "pollutants" dispute. *Cf.* Seth D. Lamden, *Cgl Coverage for Climate Change-Related Civil Litigation*, The Brief, fall 2018, at 45 ("Most jurisdictions have not directly addressed whether [greenhouse gases] constitute pollutants for purposes of a CGL pollution exclusion."). Indeed, courts have recognized the general uncertainty surrounding pollution exclusions under Hawaiʻi law. *See, e.g.*, *Charter Oak Fire Ins. Co. v. Endurance Am. Specialty Ins. Co.*, 40 F. Supp. 3d 1296, 1308–09 (D. Haw. 2014) (summarizing cases). The Hawaiʻi Supreme Court was previously asked by the Ninth Circuit to answer a question involving pollution exclusions, but that case settled before a decision issued. *See Apana v. TIG Ins. Co.*, 574 F.3d 679 (9th Cir. 2009) (certifying question to the Hawaiʻi Supreme Court); *Colony Ins. Co. v. Victory Constr. LLC*, 239 F. Supp. 3d 1279, 1287 (D. Or. 2017) ("Before the Hawaii Supreme Court could answer the question, however, the parties settled." (citing *Apana v. TIG Ins. Co.*, 2010 WL 1434763, at *1 (Haw. Apr. 7, 2010)).

Further adding to the uncertainty are the reasonable arguments on both sides of the "pollutants" dispute.  On the one hand, the State of Hawaiʻi Air Pollution Control statutes define through incorporation "air pollutant" to include greenhouse gases.  Haw. Rev. Stat. § 342B-1 (giving "[a]ir pollutant" "the same meaning as in the Clean Air Act, 42 United States Code section 7602(g)"); *see Massachusetts v. E.P.A.*, 549 U.S. 497, 532 (2007) ("[G]reenhouse gases fit well within the Clean Air Act's capacious definition of "air pollutant[.]").  Also in favor of including greenhouse gases in the term "pollutants" is the reasonable argument that greenhouse gases are "gaseous" "chemicals" that are known to cause harm to persons and property through climate change, thus satisfying the thrust of the "irritant or contaminant" qualifier.  *See Massachusetts*, 549 at 521 ("EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.' . . .  The harms associated with climate change are serious and well recognized."  (citation omitted)).  And it is at least relevant that the average person on the street would view greenhouse gases as polluting the environment.  *Cf. Pollutants and Health*, U.S. Dep't of Energy, Alternative Fuels Data Center (last visited Aug. 31, 2023), https://perma.cc/88P5-BMRB ("Greenhouse gases are a global pollutant . . . .  Carbon dioxide (CO2) is by far the most abundant [greenhouse gas] in the transportation sector.").  It's also notable that a majority of courts hold carbon *monoxide* to be a pollutant.

*See Maxum Indem. Co. v. Fla. Const. Servs., Inc.*, 59 F. Supp. 3d 1382, 1385 (M.D. Fla. 2014) ("As the Eleventh Circuit and many other courts have held, . . . carbon monoxide is a pollutant.").

On the other hand, there is the reasonable argument that greenhouse gases, such as carbon dioxide, are emitted around us daily and yet are relatively harmless to our immediate health, particularly in limited amounts.  Relative to other chemicals (e.g., lead), the lack of immediate harm from greenhouse gases may disqualify it as an "irritant or contaminant."  *See Charter Oak*, 40 F. Supp. 3d at 1309 ("[T]he mere presence of [flammable] components did not cause any irritation or contamination, so it is not clear that the components fit the definition of 'pollutants' for purposes of this case.").  There is also literal distance between where the covered property/persons reside and where the greenhouse effect *gradually* occurs, miles up in the atmosphere, further undermining an "irritant or contaminant" finding.  At least one court has held that carbon dioxide is not a pollutant, albeit in the context of exhaled carbon dioxide, not machine-emitted carbon dioxide.  *See Donaldson v. Urb. Land Ints., Inc.*, 211 Wis. 2d 224, 564 N.W.2d 728 (1997); *see also id.* at 232, 564 N.W.2d at 732 ("The terms 'irritant' and 'contaminant,' when viewed in isolation, are virtually boundless, for there is virtually no substance or chemical in existence that would not irritate or damage some person or property.  Without some limiting principle, the pollution exclusion

clause would extend far beyond its intended scope, and lead to some absurd results." (quoting *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992))). And at least some people on the street would distinguish greenhouse gases from strictly defined "pollutants." *Cf. Emissions of greenhouse gases and air pollutants*, E.U. Eurostat Environment (last visited August 31, 2023), https://perma.cc/MQ6L-Y2LM (separately defining "greenhouse gases" and "air pollutants").[5]

In short: there are no Hawaiʻi judicial decisions controlling the question of whether greenhouse gases are "gaseous" "irritant[s] or contaminant[s], including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." And there are reasonable arguments on both sides of that question. This Court thus requests guidance from the Hawaiʻi Supreme Court.

One final housekeeping note: two of the AIG policies lack pollution exclusions. That fact does not make the second certified question non-determinative, however, despite the rule that an insurer must defend an entire suit

---

[5] Two of the AIG policies specifically exclude coverage for damage caused by "non-sudden or gradual emissions of pollutants." *See* ECF No. 57-1 at 12, ¶ 48. The existence of that narrower "non-sudden or gradual" exclusion language—and its absence in other AIG policies—is of no moment because the greenhouse effects alleged in the underlying lawsuits are clearly gradual in nature, meaning that the resulting harms would be excluded by both the narrower and broader pollution exclusions, if greenhouse gases are found to be "pollutants."

if there is potentially coverage for a legal claim under at least one policy, *see Minami*, 66 Haw. at 418, 665 P.2d at 652. The two AIG policies lacking pollution exclusions have coverage periods ranging between February 1986 and January 1988, and the underlying lawsuits sparsely allege damages occurring before 2000, much less during the 1980s. So coverage under those two policies is apparently not possible, making their lack of a pollution exclusion immaterial. The AIG policies with later coverage periods, e.g., 2007 through 2010, are much more likely to correspond with allegations of contemporaneous damage in the underlying lawsuits.[6]

## V.    CONCLUSION

This Court respectfully submits these certified questions for the Hawaiʻi Supreme Court's consideration:

1) For an insurance policy defining a covered "occurrence" in part as an "accident," can an "accident" include recklessness?

2) For an "occurrence" insurance policy excluding coverage of "pollution" damages, are greenhouse gases "pollutants," i.e.,

---

[6] The 2020 *Maui* complaint and the 2021 *Honolulu* complaint likely plead liability for damages occurring between 2007 and 2010 notwithstanding the two-year statute of limitations for property damage suits, Haw. Rev. Stat. § 657-7. Hawaiʻi law holds that a statute of limitations defense is an affirmative defense, Haw. R. Civ. P. 8(c), and, logically, that a duty to defend includes the duty to assert an affirmative defense, *see Bayudan v. Tradewind Ins. Co.*, 87 Hawaiʻi 379, 391 n.14, 957 P.2d 1061, 1073 n.14 (App. 1998) (overruled on other grounds).

"gaseous" "irritant[s] or contaminant[s], including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"?

This matter is stayed pending disposition of the certification questions to the Hawai'i Supreme Court.  In the interim, this Court directs the administrative closure of this case.  The case will be reopened by the Clerk of Court upon disposition by the Hawai'i Supreme Court, or upon further order of this Court.  Such an order reopening the case may be issued sua sponte, or a party may petition for reopening upon a showing of good cause.  The administrative closing will not impact, in any manner, any party's rights or obligations or the certified questions, and no filing fee is required to reopen the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, September 5, 2023.

Jill A. Otake
United States District Judge

CIV. NO. 22-00372 JAO-WRP, *Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, et al.*; Order Certifying Questions to the Hawai'i Supreme Court