IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALOHA PETROLEUM, LTD., | CIV. NO. 22-00372 JAO-WRP |
| Plaintiff, | ORDER DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 54, AND GRANTING IN PART DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT, ECF NO. 56 |
| vs. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and AMERICAN HOME ASSURANCE COMPANY Defendants, | |
| Defendants. | |

**ORDER DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 54, AND GRANTING IN PART DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT, ECF NO. 56**

In this insurance coverage case, Plaintiff Aloha Petroleum, Ltd. ("Aloha")

asserts that Defendants National Union Fire Insurance Company of Pittsburgh, PA,

("NUFIC") and American Home Assurance Company ("AHAC") (collectively,

"AIG" or the "AIG insurers")[1] have a duty to defend Aloha against a pair of

---

[1] NUFIC and AHAC are wholly owned subsidiaries of AIG Property Casualty US Inc. and are jointly represented by the same attorneys. *Compare* ECF No. 60 (NUFIC's Amended Corporate Disclosure Statement), *with* ECF No. 61 (AHAC's Corporate Disclosure Statement). Further, both refer to their insurance contracts with Aloha as the "AIG Policies." ECF No. 56-1 at 10.

underlying climate change related lawsuits in Hawaiʻi state courts.  ECF No. 1.

Aloha and AIG filed cross-motions for partial summary judgment on the purely

legal issue of duty to defend.  ECF Nos. 54, 56.

After a hearing, the Court concluded that there were unsettled matters of

Hawaiʻi law that would determine the outcomes of the pending cross-motions.

Accordingly, the Court certified two questions for the Hawaiʻi Supreme Court.

*See* ECF No. 70.  The first question concerned whether reckless conduct could

trigger the duty to defend under an "occurrence" insurance policy that defined

occurrence in part as an "accident."  *See id.* at 2.  The second question addressed

whether greenhouse gases constitute "pollution" under an exclusion in ten of the

twelve relevant policies.  *See id.*  The Hawaiʻi Supreme Court accepted the

questions, and answered both in the affirmative.  *See Aloha Petroleum, Ltd. v.

Nat'l Union Fire Ins. Co. of Pittsburgh*, 155 Hawaiʻi 108, 557 P.3d 837 (2024).

In light of the Hawaiʻi Supreme Court's opinion, the Court held a status

conference with the parties and decided that it would first rule on the pending

cross-motions as to those ten policies that contained a pollution exclusion.  *See*

ECF No. 112.  The Court would then consider renewed cross-motions regarding

the two remaining policies.  *See id.*  The renewed cross-motions are scheduled to

be heard on February 21, 2025.  *Id.*

As such, this order pertains only to the ten policies with pollution exclusions. The Court finds no duty to defend under those policies and thus DENIES IN PART Aloha's Motion, ECF No. 54, and GRANTS IN PART AIG's Motion, ECF No. 56. The Court will rule on the duty to defend under the two remaining policies in a subsequent order.

## I. BACKGROUND

Aloha filed its First Amended Complaint in this case on April 28, 2023, alleging diversity jurisdiction over, among other things, breach of contract claims against the out-of-state AIG insurers for failing to defend Aloha against two climate change lawsuits: *County of Maui v. Sunoco LP*, No. CV-20-0000283, Dkt. No. 1 (Haw. 2d Cir. filed Oct. 12, 2020) (the "*Maui* complaint," available at ECF No. 55-17), and *City and County of Honolulu v. Sunoco LP*, No. CV-20-0000380, Dkt. No. 1 (Haw. 1st Cir. filed Mar. 22, 2021) (the "*Honolulu* complaint," available at ECF No. 55-16) (collectively, the "underlying lawsuits"). Aloha principally requests a declaratory judgment that each of the AIG insurers have a duty to defend in the underlying lawsuits. *See* ECF No. 47 at 2, 25.

The underlying lawsuits are substantially similar. They assert the same legal claims against the same entity defendants—including Aloha—in complaints that span over 100 pages. The Court summarizes those suits together, citing relevant

portions of both complaints, with an eye toward the relevant legal disputes in this case.

## A.    The Underlying Lawsuits

The *Maui* and *Honolulu* complaints are brought against "major corporate members of the fossil fuel industry [that] have known for nearly half a century that unrestricted production and use of fossil fuel products create greenhouse gas pollution that warms the planet and changes our climate." *Maui* complaint ¶ 1; *Honolulu* complaint ¶ 1.  Aloha is named as a defendant in both underlying lawsuits and is alleged to be a current subsidiary of Sunoco LP.  *See Maui* complaint ¶ 20, *Honolulu* complaint ¶ 20.

Generally, the underlying complaints aver that the defendants there "knew or should have known, based on information passed to them from their internal [teams], [and outside] groups," that use of their products would result in injuries to the counties, and they could have "warn[ed] [the public] of [the] known consequences following from the intended and foreseeable use of their products and work[ed] to minimize the damage associated with the use and combustion of such products." *Maui* complaint ¶ 8; *Honolulu* complaint ¶ 8.  In other words, they say, the "impacts of [the defendants'] fossil fuel products on the Earth's climate and associated harms to people and communities"—including tangible property harms to the counties—were "foreseeable" to the defendants.  *Maui* complaint ¶

103; *Honolulu* complaint ¶ 94; *see also Maui* complaint ¶ 148 (alleging the

defendants' "knowledge of the foreseeable harms associated with the consumption

of [their] fossil fuel products"); *Honolulu* complaint ¶ 136 (same).

The underlying complaints further allege that the defendants there

"concealed the dangers, promoted false and misleading information, sought to

undermine public support for greenhouse gas regulation, and engaged in massive

campaigns to promote the ever-increasing use of their products at ever-greater

volumes," *id*., and that, "[b]ut for such [denialist] campaigns, climate crisis

impacts in the [counties] would have been substantially mitigated or eliminated

altogether." *Maui* complaint ¶ 9; *Honolulu* complaint ¶ 9.  Thus, the crux of the

underlying lawsuits is that Aloha disregarded known risks of harm to the counties

when selling its fuel products that would inevitably combust and produce

greenhouse gases, thereby changing the climate and injuring the counties.  Some of

the specific harms alleged include "injury or destruction of [c]ounty-owned or

operated facilities critical for operations, utility services, and risk management, as

well as other assets"; "increased planning and preparation costs for community

adaptation and resiliency"; "decreased tax revenue"; and "others."  *Maui* complaint

¶¶ 9–11; *Honolulu* complaint ¶¶ 9–11.

Regarding climate change itself, the underlying complaints allege that

"ocean and atmospheric warming is overwhelmingly caused by anthropogenic

5

greenhouse gas emissions." *Maui* complaint ¶ 41; *Honolulu* complaint ¶ 35.  "As

greenhouse gases accumulate in the atmosphere," they state, "the Earth radiates

less energy back to space." *Maui* complaint ¶ 49; *Honolulu* complaint ¶ 40.

According to the underlying complaints, "[t]his accumulation and associated

disruption of the Earth's energy balance have myriad environmental and physical

consequences, including, but not limited to," warming surface temperatures, rising

sea levels, intensifying weather events, and increasing erosion, floods, and

wildfires. *Id.*

The counties allege five causes of action in the underlying lawsuits.  The

first two are public nuisance and private nuisance.  *Maui* complaint ¶¶ 204–221;

*Honolulu* complaint ¶¶ 155–173.  Those two claims focus on the defendants'

"affirmative[] and knowing[]" acts and omissions despite the "known and

foreseeable risk of climate change and its consequences." *See Maui* complaint ¶

207; *Honolulu* complaint ¶ 157.  The third and fourth claims are "strict liability"

failure to warn, and "negligent" failure to warn claims, respectively.  *Maui*

complaint ¶¶ 222–246; *Honolulu* complaint ¶¶ 174–199.  Those two claims assert

that the defendants "knew or should have known . . . of the climate effects

inherently caused by the normal use and operation of their fossil fuel products."

*See, e.g.*, *Maui* complaint ¶¶ 225–26, 237–38; *Honolulu* complaint ¶¶ 177–78,

189–90.  The fifth and final claim is the trespass claim, which asserts that the

defendants "intentionally, recklessly, or negligently caused flood waters, extreme precipitation, saltwater, and other materials, to enter the [counties'] real property." *Maui* complaint ¶ 249; *Honolulu* complaint ¶ 201.

## B.    The Pertinent AIG Insurance Policies

In its First Amended Complaint, Aloha alleges that fifteen general liability insurance policies require AIG to defend and indemnify Aloha against the underlying lawsuits. *See* ECF No. 47 at 3–8. The parties were unable to locate three of those policies during the discovery process, so their cross-motions for partial summary judgment concern only twelve policies. *See* ECF No. 54 at 3 n.1.

Each of the policies requires an "occurrence" as a condition for coverage. ECF No. 55 at 3, ¶ 13 (Aloha's Separate and Concise Statement of Facts); ECF No. 65 at 4 (AIG agreeing to the cited paragraph). An "occurrence" is defined in two ways across the policies: First, as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Or second, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ECF No. 55 at 5, ¶¶ 18–19; ECF No. 65 at 5.

As explained further below, ten of the twelve policies also contain applicable pollution exclusions. Although the precise language of the exclusions varies across policies, the parties treat any difference as immaterial to the

exclusion's applicability.  As an example, the "total" pollution exclusion from the

2004-2010 policies provides:

> This insurance does not apply to:
>
> f. Pollution
>
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time. . . .
>
> (2) Any loss, cost or expense arising out of any:
>
>> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
>>
>> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants." . . . .

*See* ECF No. 57-1 ¶¶ 50–51.  The policies define "Pollutants" as "any solid, liquid,

gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes,

acids, alkalis, chemicals and waste.  Waste includes materials to be recycled,

reconditioned or reclaimed.  *Id.* ¶ 52.

**C.    The Cross-Motions for Partial Summary Judgment**

In their cross-motions, the parties dispute whether AIG has a duty to defend

Aloha against the underlying lawsuits.  *See* ECF Nos. 54, 56.  Specifically, the

8

parties argue over whether the pertinent AIG policies potentially cover the claims asserted against Aloha in the *Maui* and *Honolulu* complaints.  *See* ECF No. 54-1 at 7; ECF No. 56-1 at 10–11.[2]

The parties generally agree on the facts relevant to their cross-motions, and the contents of the pertinent AIG policies are not contested.  *See* ECF Nos. 54-1, 56-1, 62, 64, 66, 67; *see also* ECF Nos. 55, 57, 63, 65.  The parties also agree that Hawaiʻi law governs their legal disputes.  *See* ECF No. 56-1 at 11 n.2 ("The AIG Insurers do not challenge application of Hawaii law in this case.").

Nevertheless, the parties dispute whether the policies may cover the damage alleged in the underlying lawsuits.  As mentioned above, the policies insure Aloha for damages caused by an "occurrence"—which, in relevant part, is defined as an "accident."  AIG argues that the underlying lawsuits do not allege an "accident" because they challenge Aloha's intentional conduct and because any alleged property damages were the reasonably foreseeable consequences of that conduct. *See* ECF No. 56-1 at 15–19.  Aloha responds that in addition to intentional conduct, the underlying lawsuits also allege that Aloha acted with negligence and recklessness.  *See* ECF No. 62 at 11–16.  In so arguing, Aloha highlights

---

[2]  The parties also dispute indemnification, but that question isn't before the Court. *See* ECF 56-1 at 10 ("At the parties' request, the Court deferred discovery on the duty to indemnify until after the duty to defend issues are resolved."  (citing ECF Nos. 38, 46, 51)).

allegations that it "acted with conscious disregard" to "probable," "potential," or "likely" consequences. *Id.* at 13–14.

AIG also argues that pollution exclusions in ten of the twelve policies preclude coverage for the underlying lawsuits. *See* ECF No. 56-1 at 27–31. In essence, AIG contends that greenhouse gases qualify as pollutants under the exclusion such that the policy doesn't apply to the alleged damages. *See id.* In response, Aloha emphasizes the two policies without the exclusion to say that AIG still has a duty to defend. *See* ECF No. 62 at 29–30. As to the ten policies, Aloha cites the "legal uncertainty rule" to argue that the pollution exclusions are irrelevant. *See id.* at 30. "Under the rule, '[t]he mere fact' that Hawai'i courts have not 'conclusively answered' a question interpreting a policy provision proves coverage is a possibility if there is 'a notable dispute nationwide' and 'significant conflict among jurisdictions' with respect to that provision." *Id.* (quoting *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Hawai'i 277, 290, 875 P.2d 894, 907 (1994)). It argues the rule applies because there is an open question under Hawai'i law as to whether the pollution exclusion applies only to "traditional" environmental pollution or more broadly. *See id.* at 31.

The Court held a hearing on August 24, 2023, *see* ECF No. 68, but rather than rule on the motions, the Court certified questions to the Hawai'i Supreme Court and stayed the matter pending resolution, *see* ECF No. 70.

**D.    Order Certifying Questions to the Hawaiʻi Supreme Court**

The two certified questions operated sequentially.  First, the Court asked:

> 1)  For an insurance policy defining a covered "occurrence" in part as an "accident," can an "accident" include recklessness?

ECF No. 70 at 2.  If the answer was "yes," the Court had a second question:

> 2)  For an "occurrence" insurance policy excluding coverage of "pollution" damages, are greenhouse gases "pollutants," i.e., "gaseous" "irritant[s] or contaminant[s], including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"?

*Id.* at 2, 15.

On the first question, the Court noted that the underlying complaints asserted that Aloha acted with recklessness, as well as more culpable mental states like knowing.  *See id.* at 11.  Still, the Court focused on alleged recklessness because it would more likely constitute an accident under the policies.  *See id.* at 11–12.  As the Court saw it, two lines of Hawaiʻi Supreme Court decisions presented a conflict about whether reckless conduct could be considered an accident.  In *Tri-S Corp. v. Western World Ins. Co.*, 110 Hawaiʻi 473, 493, 135 P.3d 82, 102 (2006), the Hawaiʻi Supreme Court considered whether a "wilful and wanton" misconduct claim was excepted from coverage by a clause excluding "expected or intended" injuries.  Such an exclusion clause might not apply to a wilful and wanton claim, the Supreme Court explained, "because the possibility exists that [the insured] could be found liable for recklessness, which does not involve intent or expectation

11

of injury *and is thus a covered occurrence under the policy*." *Id.*, 110 Hawai'i at 494, 135 P.3d at 103 (emphasis added).  The emphasized portion of the sentence suggests that the Supreme Court went further than just interpreting the exclusion, to also define "occurrence" to include recklessness. *See* ECF No. 70 at 12–13.

But in *AIG Haw. Ins. Co. v. Est. of Caraang*, 74 Haw. 620, 636, 851 P.2d 321, 329 (1993), the Hawai'i Supreme Court seemed to define accident to require injuries that are neither the "expected [n]or *reasonably foreseeable* result of the insured's own intentional acts or omissions." *Id.* (emphasis added).  Because *Caraang*'s definition was almost synonymous with the subjective foreseeability required by recklessness, the Court found the two lines of cases to be in conflict. *See* ECF No. 70 at 13–14.

On the second question, the Court explained that there are no Hawai'i judicial decisions controlling the question of whether greenhouse gases are "gaseous" "irritant[s] or contaminant[s], including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste," i.e., pollution and that there are reasonable arguments on both sides of that question. *See id.* at 19.  As a "housekeeping note," the Court stated that the two policies without the pollution exclusion didn't render the question non-determinative because the underlying complaints only sparsely alleged damage from that time period. *See id.* at 19–20.  The Court didn't intend to

rule on that issue, but rather meant to emphasize the significance of the pollution

exclusion question.

## E.    The Hawaiʻi Supreme Court's Opinion

The Hawaiʻi Supreme Court issued its opinion addressing both certified

questions on October 7, 2024 (the "Opinion").  *See Aloha Petroleum, Ltd.*, 155

Hawaiʻi at 111–12, 557 P.3d at 840–41.

*1.  Answer to Question 1:  An accident includes reckless conduct.*

On the first question, the Supreme Court held that "an 'accident' includes

reckless conduct for three reasons."  *Id.*, 155 Hawaiʻi at 112, 557 P.3d at 841.

First, the Supreme Court concluded that *Tri-S* controls over *Caraang* but also that

the two can be read consistently.  *See id.*, 155 Hawaiʻi at 119, 557 P.3d at 848.  It

explained that *Tri-S* "plainly states that recklessness 'does not involve intent or

expectation of injury and is thus a covered occurrence under the policy.'"  *Id.*

(quoting *Tri-S*, 110 Hawaiʻi at 494, 135 P.3d at 103).  But while "*Caraang* and *Tri-*

*S* both ruled that an 'expected' injury is not an 'accident,'" only *Tri-S* defined the

term, "[s]o, *Tri-S*" definition controls."  *Id.*, 155 Hawaiʻi at 119, 557 P.3d at 848.

As the Supreme Court summed it up:

> *Tri-S* defined an "expected" injury as one "practically certain" to
> occur. When an insured does not act with harmful intent, an
> "accident" hinges on the certainty of the risk. A policyholder's
> awareness of a possible or probable risk can be an "accident."
> When the risk crosses the line into "practical certainty," it is no
> longer an "accident."

*Id.* (citation omitted). "Reckless conduct – awareness of <u>risk</u> of harm – falls short of practical certainty." *Id.*, 155 Hawaiʻi at 120, 557 P.3d at 849 (emphasis in original).[3]

In short, Hawaiʻi applies a "practically certain" standard to define when harm falls outside the definition of "accident" and therefore "occurrence." *See id.*, 155 Hawaiʻi at 123, 557 P.3d at 852. "This standard covers the results of negligent or reckless conduct and excludes intentional or practically certain harm." *Id.* Ultimately, then, Aloha won before the Supreme Court on this question.

    2. *Answer to Question 2:  Greenhouse gases are included in the pollution exclusion.*

On the second question, the Supreme Court concluded that the pollution exclusion encompasses greenhouse gases. *See id.*, 155 Hawaiʻi at 124, 557 P.3d at 853. First, it followed those courts that have declined to read the pollution exclusion too broadly and instead limited the exclusion to "traditional environmental pollution." *See id.*, 155 Hawaiʻi at 126, 557 P.3d at 855. The Supreme Court articulated that "[t]raditional environmental pollution has three

---

[3] The Supreme Court clarified the language from *Caraang* that gave the Court pause. It explained that *Caraang* addressed "cases where the insured acted with an intent to harm others," and was therefore inapposite. *Id.*, 155 Hawaiʻi at 119, 557 P.3d at 848. The Supreme Court also pointed out that the plain meaning of accident includes recklessness and that general insurance principles support the conclusion. *See id.*, 155 Hawaiʻi at 122–23, 557 P.3d at 851–52.

main features:  (1) the release of a damaging substance, (2) into the environment, (3) that causes harm because of its presence in the environment."  *Id.*  And that greenhouse gases demonstrate those characteristics:  "Aloha's gasoline produces GHGs [greenhouse gases].  These gases accumulate in the atmosphere and trap heat.  Because they are released into the atmosphere and cause harm due to their presence in the atmosphere, GHGs are pollutants."  *Id.*

The Supreme Court then rejected Aloha's contention that Hawaii's legal uncertainty principle applied.  It explained that while nationally there are two interpretations of the pollution exclusion, both would include greenhouse gases, so the dispute is not coverage determinative.  *See id.*, 155 Hawaiʻi at 127–28, 557 P.3d at 856–57.  Similarly, the Supreme Court found the pollution exclusion unambiguous as to the discharge of greenhouse gases alleged in the underlying complaints.  *See id.*, 155 Hawaiʻi at 129, 557 P.3d at 858.  Thus, Aloha could not rely on the Hawaii's principle of interpreting ambiguities in favor of the insured, and ultimately lost before the Supreme Court on this question.  *See id.*, 155 Hawaiʻi at 128, 557 P.3d at 857.

Regarding this Court's "housekeeping note" about the two policies without pollution exclusions, the Supreme Court commented:

> Whether Aloha is ultimately entitled to a defense under the 1986 and 1987 policies is a question for the District Court. To award coverage under those policies, the District Court must find that the counties' complaint alleges property damage

15

> during the policies' coverage period. In certifying the question
> to us, the District Court wrote, "the underlying lawsuits
> sparsely allege damages occurring before 2000." Thus,
> "coverage under those two policies is apparently not possible,
> making their lack of a pollution exclusion immaterial." We
> leave it to the District Court to find whether these "sparse"
> damage allegations create a possibility of coverage, something
> it so far said is "apparently" not possible.

*Id.*, 155 Hawaiʻi at 124, 557 P.3d at 853. Because this topic relates to the

remaining policies that are the subject of the pending renewed cross-motions for

summary judgment, the Court will address it in its forthcoming order. *See* ECF

Nos. 113, 114.

## F.    Post-Opinion Procedural History

Upon receipt of the Opinion, the Court directed the parties to file a joint

status reporting regarding next steps. *See* ECF No. 103. The parties disputed the

precise import of the Opinion. *See* ECF No. 104. Initially, Aloha represented that

the Opinion resolved the matter as to those ten policies with a pollution exclusion,

but that the Court would still need to determine whether AIG had a duty to defend

under the two policies lacking the exclusion. *See id.* at 2–6. AIG considered the

Opinion dispositive as to all twelve policies and asked the Court to enter judgment

in its favor. *See id.* at 6–10.

After some back and forth with the parties about how to proceed, *see* ECF

Nos. 105–110, including some possible shifts from the parties about the scope of

the Opinion, *see* ECF No. 108, the Court called a status conference, ECF No. 112.

16

Ultimately, Aloha told the Court that it would not raise new arguments as to the duty to defend under the policies with pollution exclusions, so the Court informed the parties that it would rule on the previously filed cross-motions for summary judgment as to those ten policies. *Id.* As to the two policies without the exclusion, the Court invited renewed cross-motions for summary judgment and set a hearing for February 21, 2025. *Id.* Those cross-motions have now been filed. *See* ECF Nos. 113, 114.

## II.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In insurance suits, opposing parties often cross-move for summary judgment on the same coverage issue that is purely legal in nature, i.e., the material facts are not in dispute. *See, e.g.*, *Burlington Ins. Co. v. Oceanic Design & Const., Inc.*, 383 F.3d 940, 945 (9th Cir. 2004); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Seagate Tech., Inc.*, 2013 WL 1282971, at *1 (N.D. Cal. Mar. 27, 2013). The court should decide those cross-motions by determining whether the insurance policy provides, or does not provide, coverage as a matter of state law. *See Nautilus Ins. Co. v. Hawk Transp. Servs., LLC*, 792 F. Supp. 2d 1123, 1131 (D. Haw. 2011). For each cross-motion, the moving party has the burden of persuading the court that it is entitled to judgment as a matter of

law. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,

1102 (9th Cir. 2000).

## III.    DISCUSSION

The Court begins with a summary of Hawaiʻi law on the interpretation of

insurance contracts and on an insurer's duty to defend.

## A.    Hawaiʻi Law—Interpreting Insurance Contracts, and the Duty to Defend

Under Hawaiʻi law, insurance policies are treated as contracts that must be

interpreted in favor of the insured:

> [I]nsurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended.  Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.
>
> Nevertheless . . . because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Tri-S Corp.*, 110 Hawaiʻi at 489, 135 P.3d at 98 (quoting *Dairy Rd. Partners v.*

*Island Ins. Co.*, 92 Hawaiʻi 398, 411, 992 P.2d 93, 106 (2000)).

"It is well settled that the duty to provide coverage and the duty to defend on

the part of an insurer are separate and distinct." *Sentinel Ins. Co.*, 76 Hawaiʻi at

18

291, 875 P.2d at 908.  "The obligation to defend is broader than the duty to pay

claims and arises wherever there is the mere *potential* for coverage.  In other

words, the duty to defend rests primarily on the *possibility* that coverage exists.

This possibility may be remote but if it exists, the insurer owes the insured a

defense." *Tri-S Corp.*, 110 Hawaiʻi at 488, 135 P.3d at 98 (editorial marks

omitted) (quoting *Dairy Rd.*, 92 Hawaiʻi at 412, 992 P.2d at 107).

        Hence, for AIG's Motion, AIG has the burden to prove—i.e., to persuade as

the movant—that "it would be *impossible* for the [counties] to prevail against

[Aloha] in the underlying lawsuit[s] on a claim covered by the [pertinent AIG]

policies." *Id.* (editorial marks omitted) (quoting *Dairy Rd.*, 92 Hawaiʻi at 412–13,

992 P.2d at 107–08).  "Conversely, [Aloha's] burden with respect to its [Motion] is

comparatively light, because it has merely to prove that a *possibility* of coverage

exists." *Id.* (editorial marks omitted) (quoting *Dairy Rd.*, 92 Hawaiʻi at 412–13,

992 P.2d at 107–08).  For both Motions, "[a]ll doubts as to whether a duty to

defend exists are resolved against [AIG] and in favor of [Aloha]." *Sentinel Ins.

Co.*, 76 Hawaiʻi at 287, 875 P.2d at 904 (citation omitted) (affirming the grant of

an insured's motion for summary judgment on the issue of duty to defend).

        "Hawaii adheres to the 'complaint allegation rule'" for duty to defend

inquiries. *Burlington*, 383 F.3d at 944 (quoting *Pancakes of Haw., Inc. v. Pomare

Props. Corp.*, 85 Hawaiʻi 286, 944 P.2d 83, 88 (App. 1997)).  "The focus is on the

19

alleged claims and facts." *Id.*; *see also Dairy Rd.*, 92 Hawai‘i at 417, 992 P.2d at 112 (holding that a duty-to-defend analysis is generally limited to the "four corners" of the underlying complaint).  Factual allegations are particularly important in triggering a duty to defend, for "when the *facts* alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts . . . are insufficient to trigger the insurer's duty to defend." *Dairy Rd.*, 92 Hawai‘i at 417, 992 P.2d at 112.  "The duty to defend includes mixed actions where some claims are covered and others are not.  If one allegation in the complaint is potentially covered, the insurer must defend the whole lawsuit." *Aloha Petroleum, Ltd.*, 155 Hawai‘i at 118, 557 P.3d at 847 (citing *St. Paul Fire & Marine Ins. Co. v. Bodell Constr. Co.*, 153 Hawai‘i 381, 384, 538 P.3d 1049, 1052 (2023)).

## B.    An "Occurrence"

Because the pollution exclusions preclude coverage, the Court need not discuss the "occurrence" requirement in detail here.  Suffice it to say that the Opinion answered the question in Aloha's favor and concluded that allegations of reckless behavior constitute an accident and thus an occurrence under the policies.

## C.    Pollution Exclusion

The Opinion forecloses coverage under the ten policies that contain some version of a pollution exclusion.  As such, AIG has no duty to defend under those policies.

While the differences in the policies' pollution exclusions don't affect the outcome, the Court includes the language here for reference.  In the two earliest policies, which include the "qualified" exclusion, the policies read:

> This insurance does not apply:  (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*See* ECF No. 55 ¶ 23; ECF No. 55-2 at 8.  Two other policies include an exclusion that states in relevant part:  "THERE IS NO COVERAGE FOR POLLUTION AS REGARDS THE FOLLOWING:  NON-SUDDEN OR GRADUAL EMISSIONS OF POLLUTANTS . . . ARISING OUT OF THE PRODUCT/COMPLETED OPERATIONS HAZARD."  *See* ECF No. 57-1 ¶ 48; ECF No. 57-7 at 32 (capitalization in original).  Finally, the policies from after 2004 all include the "total" exclusion, which reads:

> This insurance does not apply to:
>
> f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time. . . .

(2) Any loss, cost or expense arising out of any:

> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants." . . . .

*See* ECF No. 57-1 ¶¶ 50–51.  The policies define "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  *Id.* ¶ 52.

As the Court mentioned in its order certifying questions to the Hawaiʻi Supreme Court, the parties could have raised various arguments about causation or specific "release or escape" language in the policies, *see* ECF No. 70 at 15, but opted not to quibble with the language or dispute causation under these policies. Likewise, the "non-sudden or gradual emissions of pollutions" language in certain of the policies could potentially have been another ground to distinguish the policies but ultimately "is of no moment because the greenhouse effects alleged in

the underlying lawsuits are clearly gradual in nature, meaning that the resulting harms would be excluded by both the narrower and broader pollution exclusions, if greenhouse gases are found to be 'pollutants.'" *Id.* at 19 n.5. In short, and to the parties' credit, they recognized that the dispute would come down to the definition of pollutant and whether the legal uncertainty rule applied.

The Supreme Court unequivocally answered those questions in AIG's favor. Adopting and applying the "traditional environmental pollution" reading of the exclusions, the Supreme Court held simply: "Greenhouse gases, including carbon dioxide, produce 'traditional' environmental pollution. Aloha's gasoline produces GHGs. These gases accumulate in the atmosphere and trap heat. Because they are released into the atmosphere and cause harm due to their presence in the atmosphere, GHGs are pollutants." *Aloha Petroleum, Ltd.*, 155 Hawaiʻi at 126, 557 P.3d at 855. In so concluding, the Supreme Court rejected Aloha's arguments that greenhouse gases are not traditional pollution because they are produced when gasoline is used in its legal, ordinary, and intended way." *See id.*, 155 Hawaiʻi at 127, 557 P.3d at 856. The Court explained, "Pollution doesn't just refer to unintended spills of toxic substances. Many products – pesticides, aerosols, non-reef-safe sunscreen, and fossil fuels – are inherently polluting when used in their intended way. What makes a product a pollutant is that it causes damage due to its presence in the environment." *Id.* (emphasis omitted).

Similarly, the Supreme Court foreclosed Aloha's reliance on the legal uncertainty rule. While the Supreme Court recognized a national dispute about whether to limit pollution exclusions to traditional environmental pollution or to read them more literally, *see id.*, 155 Hawai'i at 127–28, 557 P.3d at 856–57, it found that resolution of the dispute wasn't outcome determinative because Aloha's claims would be excluded under either reading, *see id.*

With pollutants defined to include greenhouse gases, and with legal uncertainty closed off as an avenue, there is no possibility of coverage for Aloha under those ten policies with the pollution exclusions. As such, AIG has no burden to defend.

## IV.    CONCLUSION

For the foregoing reasons the Court DENIES IN PART Plaintiff's Motion for Partial Summary Judgment and GRANTS IN PART Defendants' Motion for Partial Summary Judgment as to those ten policies that contain a pollution exclusion. The Court will address the remaining two policies and the ultimate duty to defend by subsequent order on the renewed cross-motions for summary judgment.

///

///

///

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, December 27, 2024.



Jill A. Otake
United States District Judge

CIV. NO. 22-00372 JAO-WRP, *Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, et al.*; Order Denying in Part Plaintiff's Motion for Partial Summary Judgment, ECF No. 54, and Granting in Part Defendants' Partial Motion for Summary Judgment, ECF No. 56